# Exhibit 1

## MEMORANDUM OF AGREEMENT

THIS AGREEMENT is made and entered into by and between Wilton Rancheria (the "Tribe"), Boyd Gaming Corp. (the "Operator") and UNITE HERE International Union (the "Union").

1.     This Agreement shall cover all employees defined as "Eligible Employees" by the Tribal Labor Relations Ordinance (referred to hereinafter as "Employees") at any casino and related facility (collectively the "Casino") which during the term of this Agreement is owned by, operated by or substantially under the control of the Tribe, except that the following classifications shall be excluded: sports book writer, slot machine mechanics, casino guest service representatives, bingo employees, keno runners, keno writers, and office clerical employees, and confidential employees as defined in Section 2(11) of the National Labor Relations Act (along with those classifications excluded from the definition of "Eligible Employee" in the Tribal Labor Relations Ordinance). The term "related facility" shall mean any facility the only significant purpose of which is to facilitate patronage of Class III gaming operations. The term "Tribe" shall be deemed to include any person, firm, partnership, corporation, joint venture or other legal entity substantially under the control of: (a) the Tribe covered by this Agreement; (b) one or more principal(s) of the Tribe covered by this Agreement; (c) a subsidiary of the Tribe covered by this Agreement; or (d) any person, firm, partnership, corporation, joint venture or other legal entity which substantially controls the Tribe covered by this Agreement.  The term "Operator" shall be deemed to include any person, firm, partnership, corporation, joint venture or other legal entity substantially under the control of: (a) the Operator covered by this Agreement; (b) one or more principal(s) of the Operator covered by this Agreement; (c) a subsidiary of the Operator covered by this Agreement; or (d) any person, firm, partnership, corporation, joint venture or other legal entity which substantially controls the Operator covered by this Agreement.

2.     The parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino, and to hereby establish the following procedure for the purpose of ensuring an orderly environment for Employees to exercise their rights under the Tribal Relations Ordinance to organize collectively, should employees choose to do so, and to avoid picketing and/or other economic action directed at the Tribe in the event the Union decides to conduct an organizing campaign among the Employees.

3.     The Tribe and the Operator will take a neutral approach to unionization of Employees. The Tribe and the Operator will not do any action nor make any statement that will directly or indirectly state or imply any opposition by the Tribe or the Operator to the selection by such Employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.

4.     The Union and its representatives will not coerce or threaten any Employee in an effort to obtain authorization cards.

5.     If the Union provides written notice to the Tribe or the Operator of its intent to organize Employees covered by this Agreement, the Tribe and the Operator shall provide access to its premises and to such Employees by the Union.  The Union may engage in organizing efforts in non-public areas of the Casino during Employees' non-working times (before work, after work, and during meals and breaks) and/or during such other periods as the parties may mutually agree upon. "Organizing" includes communicating with Employees before and after recognition of the Union as provided in Paragraph 7.

6.     Within fifteen (15) days following receipt of written notice of intent to organize

1

Employees, the Tribe or the Operator will furnish the Union with a complete list of Employees, including both full and part-time Employees, showing their job classifications, departments, home and email addresses, and telephone numbers. Thereafter, the Tribe or the Operator will provide updated complete lists monthly.

7.      The Union is not presently recognized as the exclusive collective bargaining representative of the Employees.  The Union may request recognition as the exclusive collective bargaining agent for such Employees. The arbitrator identified in Paragraph 11, or another person mutually agreed to by parties, will conduct a review of Employees' authorization cards and membership information submitted by the Union in support of its claim to represent a majority of such Employees. If that review establishes that a majority of such Employees has designated the Union as their exclusive collective bargaining representative or joined the Union, the Tribe and the Operator will recognize the Union as such representative of such Employees. The Tribe and the Operator will not file a petition with the National Labor Relations Board for any election in connection with any demands for recognition provided for in this agreement. The parties agree that if any other person or entity petitions the National Labor Relations Board for any election as a result of or despite recognition of the Union pursuant to this Paragraph, (a) the parties will each request that the NLRB dismiss the petition on grounds of recognition bar or, if they have agreed to a collective bargaining agreement covering Employees at the time the petition is filed, on grounds of contract bar, (b) if the petition is not dismissed, the parties shall agree to a full consent election agreement under Section 102.62(c) of the NLRB's Rules and Regulations, and (c) the parties shall at all times abide by the provisions of this Agreement except that the Union may file unfair labor practice charges. Except as provided above, the parties will not file any charges with the National Labor Relations Board in connection with any act or omission occurring within the context of this agreement; arbitration under Paragraph 11 shall be the exclusive remedy.

8.      If the Union is recognized as the exclusive collective bargaining representative as provided in paragraph 7, negotiations for a collective bargaining agreement shall be commenced immediately and conducted diligently and in good faith to the end of reaching agreement expeditiously. If the parties are unable to reach agreement on a collective bargaining agreement within 120 days after recognition pursuant to Paragraph 7, all unresolved issues shall be submitted for resolution to final and binding arbitration pursuant to Paragraph 11.  The arbitrator identified in paragraph 11 below shall be the arbitrator, unless another arbitrator is mutually agreed to by the parties. The arbitrator shall be guided by the following considerations: a) Tribe's financial ability; b) size and type of the Tribe's operations; c) cost of living as it affects the Employees; d) ability of the Employees, through the combination of wages, hours and benefits, to earn a living wage to sustain themselves and their families; and e) Employees' productivity.

9.      During the term of this Agreement, the Union will not engage in any strike, picketing or other adverse economic or public relations' activity at, or in connection with, the Casino, and the Tribe and the Operator will not engage in a lockout of the Employees. Notwithstanding the termination provision above, if the Tribe or the Operator recognizes any union besides Union as the exclusive collective bargaining representative of Employees, or any of them, this paragraph shall terminate immediately and without notice.

10.     The Tribe and the Operator shall incorporate the entirety of paragraphs 3, 5, 6, 7 and 8 of this of Agreement in any contract, subcontract, lease, sublease, operating agreement, franchise agreement or any other agreement or instrument giving a right to any person to operate any enterprise

in the Casino employing employees in classifications covered by the Tribal Labor Relations Ordinance, and shall obligate any person taking such interest, and any and all successors and assigns of such person, to in turn incorporate said paragraphs in any further agreement or instrument giving a right as described above. The Tribe or the Operator shall enforce such provisions, or at its option, assign its rights to do so to the Union. The Tribe or the Operator shall give the Union written notice of the execution of such agreement or instrument and identify the other party(ies) to the transaction within 15 days after the agreement or instrument is signed. The terms "Tribe", "Operator" and "Casino" shall be modified in such agreement or instrument to conform to the terminology in such agreement or instrument but retain the same meaning as in this Agreement, and the terms "Tribe" and "Operator" as used herein shall be modified to refer to the person or persons receiving a right to operate an enterprise in the Casino, and the term "Employees" shall be modified to refer to the employees of such person or persons.

11.    The parties agree that any disputes over the interpretation or application of this Agreement shall be submitted to expedited and binding arbitration.    The Tribe's and the Union's representatives shall meet within fourteen (14) calendar days after the receipt of a panel of arbitrators from the Federal Mediation and Conciliation Service ("FMCS"). Selection of a sole and impartial arbitrator shall be made by the Tribe and the Union representatives each alternately striking, with Union making the first strike, one (1) name from a seven (7) member panel of arbitrators, received from the ("FMCS"), who are members of the National Academy of Arbitrators and who reside in California, Arizona, New Mexico or Nevada. The person whose name remains will be requested to serve as the impartial arbitrator. By mutual agreement, the parties may waive the use of the panel named above and refer the matter in dispute to an arbitrator selected from any other source.    The arbitrator shall have the authority to determine the arbitration procedures to be followed. The arbitrator shall also have the authority to order the non-compliant party to comply with this Agreement. The parties hereto agree to comply with any order of the arbitrator, which shall be final and binding. The United States District Court for the Eastern District of California shall have exclusive jurisdiction in any action concerning arbitration under this Agreement. The parties consent to the entry of any order of the arbitrator as the order or judgment of the Court, without entry of findings of fact and conclusions of law.

12.    For the sole purpose of enabling a suit to compel arbitration or to confirm an arbitration award under this Agreement, the Tribe agrees to a limited waiver of sovereign immunity and consents to be sued in federal court without exhausting tribal remedies, or in the event that the federal court declines jurisdiction, in the appropriate state superior court.

13.    This Agreement shall be in full force and effect from the date it is fully executed on behalf of the Tribe, the Operator and the Union until three (3) years from the full public opening of the Casino, or if sooner upon execution of a collective bargaining agreement or issuance of an interest arbitration award which concludes the collective bargaining agreement negotiations, either of which explicitly supersedes this document.

14.    The Union hereby agrees to actively support before the appropriate federal, state, and local administrative, bureaucratic, regulatory and legislative bodies, the Tribe's efforts to obtain ratification of the Compact by the California legislation, and to take all reasonable and necessary steps to assist the Tribe in connection therewith. For purposes of this Agreement, "active support" includes letter writing, consultation with and lobbying of elected and appointed officials, availability of members for events in furtherance of the Tribe's goals, opposition to competitor's efforts to prohibit the Tribe's entry into tribal government gaming on its lands in Elk Grove, California, and assistance with local government relations.

3

15.    The Tribal Chairperson has been authorized by an action appropriate under tribal law to enter into this Agreement, including the limited waiver of the Tribe's sovereign immunity as set forth in paragraph 12.

16.    In the event that any provision of this Agreement should be rendered invalid by applicable legislation or be declared invalid by any court or regulatory agency of competent jurisdiction, such action shall not invalidate the entire Agreement, it being the express intention of the parties hereto that all other provisions not rendered invalid shall remain in full force and effect. Both parties agree that the subject matter of any provision found to be invalid shall be renegotiated for the purpose of replacing the invalidated provision with a valid substitute which most nearly achieves the same objective. In the even the parties are unable to agree on a substitute, the matter shall be submitted to arbitration as provided in Paragraph 11; the arbitrator shall choose or formulate a substitute provision which accomplishes the purposes of the preceding sentence.

IN WITNESS WHEREOF, the parties hereto by their duly designated representatives have hereunto set their hands.

FOR THE TRIBE:                                FOR THE UNION:

Wilton Rancheria                              UNITE HERE International Union

By: _Raymond C Hitchcock_                     By: _Kri K___

Its: _Chairman_                               Its: _INTERNational Vice pres._

Date: _8/7/17_                                Date: _8/3/17_

FOR THE OPERATOR:

Boyd Gaming Corporation

By: _Brian A. Larson_

Its: _EVP, Sec. + General Counsel_

Date: _8/3/17_

4