Exhibit 2

# WILTON RANCHERIA CODE
# TITLE 7 – LABOR CODE
# CHAPTER 3 – TRIBAL LABOR RELATIONS ORDINANCE OF 2019

### CITE AS: 7 WRC § 3-101, et seq.

### ENACTED: APRIL 18, 2019

## ARTICLE I
## GENERAL

### SECTION 3-101    TITLE

This Ordinance shall be titled the Tribal Labor Relations Ordinance of 2019 and shall be codified as Chapter 3 of the Tribe's Labor Code.

### SECTION 3-102    AUTHORITY

A.    Article VI, Section 2 of the Constitution of Wilton Rancheria ("Constitution") authorizes the Tribal Council to make the Tribe's laws.

B.    Article VI, Section 2(a) of the Constitution grants the Tribal Council the power to make all laws, including resolutions, codes, and statutes.

C.    Article VI, Section 2(c) of the Constitution grants the Tribal Council the power to pass laws regulating the Tribe's elections, enrollment, employment, and all other matters so long as those laws are consistent with the Constitution.

### SECTION 3-103    BACKGROUND

This Ordinance governs the rights, responsibilities and limitations of any labor union or organization that desires to organize employees of the Tribe's class III casino or related facilities that facilitate patronage of the Tribe's class III gaming operations. It is enacted in accordance with Section 12.10 of the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, effective January 22, 2018, which provides that the gaming activities authorized by the compact may only commence after the Tribe has adopted an ordinance identical to the Tribal Labor Relations Ordinance attached to the compact, and the gaming activities may only continue as long as the Tribe maintains the ordinance. Article II of this Ordinance is identical to the ordinance attached to the Tribe's January 22, 2018 compact.

### SECTION 3-104    SCOPE

This Ordinance shall be narrowly construed to apply to Eligible Employees to the extent the Ordinance provisions are lawfully required by an effective tribal-state gaming compact between the Tribe and the State of California.

**SECTION 3-105**     **DEFINITIONS**

A.     "Eligible Employee" has the meaning given to it in Section 3-202 of this Ordinance.

B.     "Ordinance" means this Tribal Labor Relations Ordinance of 2019.

C.     "Tribe" means the Wilton Rancheria, a federally recognized Indian tribe.

ARTICLE II
APPLICABILITY, RIGHTS, DUTIES, DISPUTE RESOLUTION

**SECTION 3-201**     **THRESHOLD OF APPLICABILITY**

A.     This Ordinance shall apply only if the Tribe employs 250 or more persons in a tribal casino and related facility.  For purposes of this Ordinance, a "tribal casino" is one in which class III gaming is conducted pursuant to the tribal-state compact.  A "related facility" is one for which the only significant purpose is to facilitate patronage of the class III gaming operations.

B.     Upon the request of a labor union or organization which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work, the Tribal Gaming Commission shall certify the number of employees in a tribal casino or other related facility as defined in subsection (A) of this Section 3-201.  Either party may dispute the certification of the Tribal Gaming Commission to the Tribal Labor Panel, which is defined in Section 3-213 herein.

**SECTION 3-202**     **DEFINITION OF ELIGIBLE EMPLOYEES**

A.     The provisions of this Ordinance shall apply to any person (hereinafter "Eligible Employee") who is employed within a tribal casino in which class III gaming is conducted pursuant to a tribal-state compact or other related facility, the only significant purpose of which is to facilitate patronage of the class III gaming operations, except for any of the following:

   1.     any employee who is a supervisor, defined as any individual having authority, in the interest of the Tribe and/or employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibility to direct them or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment;

   2.     any employee of the Tribal Gaming Commission;

   3.     any employee of the security or surveillance department, other than those who are responsible for the technical repair and maintenance of equipment;

   4.     any cash operations employee who is a "cage" employee or money counter; or

   5.     any dealer.

B.      On July 1 of each year, the Tribal Gaming Commission shall certify the number of Eligible Employees employed by the Tribe to the administrator of the Tribal Labor Panel.

### SECTION 3-203    NON-INTERFERENCE WITH REGULATORY OR SECURITY ACTIVITIES

Operation of this Ordinance shall not interfere in any way with the duty of the Tribal Gaming Commission to regulate the gaming operation in accordance with the Tribe's National Indian Gaming Commission-approved gaming ordinance.  Furthermore, the exercise of rights hereunder shall in no way interfere with the tribal casino's surveillance/security systems, or any other internal controls system designed to protect the integrity of the Tribe's gaming operations.  The Tribal Gaming Commission is specifically excluded from the definition of Eligible Employees.

### SECTION 3-204    ELIGIBLE EMPLOYEES FREE TO ENGAGE IN OR REFRAIN FROM CONCERTED ACTIVITY

Eligible Employees shall have the right to self-organization, to form, to join, or assist employee organizations, to bargain collectively through representatives of their own choosing, to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection, and shall also have the right to refrain from any or all such activities.

### SECTION 3-205    UNFAIR LABOR PRACTICES FOR THE TRIBE

It shall be an unfair labor practice for the Tribe and/or employer or their agents:

A.      To interfere with, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

B.      To dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it, but this does not restrict the Tribe and/or employer and a certified union from agreeing to union security or dues check off;

C.      To discharge or otherwise discriminate against an Eligible Employee because s/he has filed charges or given testimony under this Ordinance; or

D.      After certification of the labor organization pursuant to Section 3-210, to refuse to bargain collectively with the representatives of Eligible Employees.

### SECTION 3-206    UNFAIR LABOR PRACTICES FOR THE UNION

It shall be an unfair labor practice for a labor organization or its agents:

A.      To interfere, restrain or coerce Eligible Employees in the exercise of the rights guaranteed herein;

B.      To engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a primary or secondary boycott or a refusal in the course of his employment to use, manufacture, process,

3

transport or otherwise handle or work on any goods, articles, materials, or commodities or to perform any services; or to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce or other terms and conditions of employment.  This section does not apply to Section 3-211;

C. To force or require the Tribe and/or employer to recognize or bargain with a particular labor organization as the representative of Eligible Employees if another labor organization has been certified as the representative of such Eligible Employees under the provisions of this Ordinance;

D. To refuse to bargain collectively with the Tribe and/or employer, provided it is the representative of Eligible Employees subject to the provisions herein; or

E. To attempt to influence the outcome of a tribal governmental election, provided, however, that this section does not apply to tribal members.

**SECTION 3-207    TRIBE AND UNION RIGHT TO FREE SPEECH**

A. The Tribe's and union's expression of any view, argument or opinion or the dissemination thereof, whether in written, printed, graphic or visual form, shall not constitute or be evidence of interference with, restraint, or coercion if such expression contains no threat of reprisal or force or promise of benefit.

B. The Tribe agrees that if a union first offers in writing that it and its local affiliates will comply with (B)(1) and (B)(2), the Tribe shall comply with the provisions of (C) and (D).

   1. For a period of three hundred sixty-five (365) days following delivery of a Notice of Intent to Organize (NOIO) to the Tribe:

      a. Not engage in strikes, picketing, boycotts, attack websites, or other economic activity at or in relation to the tribal casino or related facility; and refrain from engaging in strike-related picketing on Indian lands as defined in 25 U.S.C. § 2703(4);

      b. Not disparage the Tribe for purposes of organizing Eligible Employees;

      c. Not attempt to influence the outcome of a tribal government election; and

      d. During the three hundred sixty-five (365) days after the Tribe received the NOIO, the Union must collect dated and signed authorization cards pursuant to Section 3-210 herein and complete the secret ballot election also in Section 3-210 herein.  Failure to complete the secret ballot election within the three hundred sixty five (365) days after the Tribe received the NOIO shall mean that the union shall not be permitted to deliver another NOIO for a period of two years (730 days).

   2. Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 3-213 herein.

4

C.   Upon receipt of a NOIO, the Tribe shall:

   1.   Within two (2) days provide to the union an election eligibility list containing the full first and last names of the Eligible Employees within the sought-after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses;

   2.   For period of three hundred sixty-five (365) days thereafter, Tribe will not do any action nor make any statement that directly or indirectly states or implies any opposition by the Tribe to the selection by such employees of a collective bargaining agent, or preference for or opposition to any particular union as a bargaining agent.  This includes refraining from making derisive comments about unions; publishing or posting pamphlets, fliers, letters, posters or any other communication which could reasonably be interpreted as criticizing the union or advising Eligible Employees to vote "no" against the union.  However, the Tribe shall be free at all times to fully inform Eligible Employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe; and

   3.   Resolve all issues, including collective bargaining impasses, through the binding dispute resolution mechanisms set forth in Section 3-213 herein.

D.   The union's offer in subsection (B) of this Section 3-207 shall be deemed an offer to accept the entirety of this Ordinance as a bilateral contract between the Tribe and the union, and the Tribe agrees to accept such offer.  By entering into such bilateral contract, the union and Tribe mutually waive any right to file any form of action or proceeding with the National Labor Relations Board for the three hundred sixty-five (365)-day period following the NOIO.

E.   The Tribe shall mandate that any entity responsible for all or part of the operation of the casino and related facility shall assume the obligations of the Tribe under this Ordinance.  If at the time of the management contract, the Tribe recognizes a labor organization as the representative of its employees, certified pursuant to this Ordinance, the labor organization will provide the contractor, upon request, the election officer's certification which constitutes evidence that the labor organization has been determined to be the majority representative of the Tribe's Eligible Employees.

**SECTION 3-208     ACCESS TO ELIGIBLE EMPLOYEES**

A.   Access shall be granted to the union for the purposes of organizing Eligible Employees, provided that such organizing activity shall not interfere with patronage of the casino or related facility or with the normal work routine of the Eligible Employees and shall be done on non-work time in non-work areas that are designated as employee break rooms or locker rooms that are not open to the public.  The Tribe may require the union and or union organizers to be subject to the same licensing rules applied to individuals or entities with similar levels of access to the casino or related facility, provided that such licensing shall not be unreasonable, discriminatory, or designed to impede access.

B.   The Tribe, in its discretion, may also designate additional voluntary access to the Union in such areas as employee parking lots and non-casino facilities located on tribal lands.

5

C.     In determining whether organizing activities potentially interfere with normal tribal work routines, the union's activities shall not be permitted if the Tribal Labor Panel determines that they compromise the operation of the casino:

   1.     Security and surveillance systems throughout the casino, and reservation;

   2.     Access limitations designed to ensure security;

   3.     Internal controls designed to ensure security; or

   4.     Other systems designed to protect the integrity of the Tribe's gaming operations, tribal property and/or safety of casino personnel, patrons, employees or tribal members, residents, guests or invitees.

D.     The Tribe agrees to facilitate the dissemination of information from the union to Eligible Employees at the tribal casino by allowing posters, leaflets and other written materials to be posted in non-public employee break areas where the Tribe already posts announcements pertaining to Eligible Employees.  Actual posting of such posters, notices, and other materials shall be by employees desiring to post such materials.

### SECTION 3-209     INDIAN PREFERENCE EXPLICITLY PERMITTED

Nothing herein shall preclude the Tribe from giving Indian preference in employment, promotion, seniority, lay-offs or retention to members of any federally recognized Indian tribe or shall in any way affect the Tribe's right to follow tribal law, ordinances, personnel policies or the Tribe's customs or traditions regarding Indian preference in employment, promotion, seniority, lay-offs or retention.  Moreover, in the event of a conflict between tribal law, tribal ordinance or the Tribe's customs and traditions regarding Indian preference and this Ordinance, the tribal law, tribal ordinance, or the Tribe's customs and traditions shall govern.

### SECTION 3-210     SECRET BALLOT ELECTIONS

A.     The election officer shall be chosen within three (3) business days of notification by the labor organization to the Tribe of its intention to present authorization cards, and the same election officer shall preside thereafter for all proceedings under the request for recognition; provided, however, that if the election officer resigns, dies, or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.  Dated and signed authorized cards from thirty percent (30%) or more of the Eligible Employees within the bargaining unit verified by the elections officer will result in a secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

B.     Upon the showing of interest to the election officer pursuant to subsection (A), within two (2) working days the Tribe shall provide to the union an election eligibility list containing

the full first and last names of the Eligible Employees within the sought after bargaining unit and the Eligible Employees' last known addresses and telephone numbers and email addresses. Nothing herein shall preclude a Tribe from voluntarily providing an election eligibility list at an earlier point of a union organizing campaign with or without an election. The election shall be conducted by the election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1. In the event either that a party refuses to enter into the consent election agreement or that the parties do not agree on the terms, the election officer shall issue an order that conforms to the terms of the form consent election agreement and shall have authority to decide any terms upon which the parties have not agreed, after giving the parties the opportunity to present their views in writing or in a telephonic conference call. The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 3-213(B)(2). All questions concerning representation of the Tribe and/or Eligible Employees by a labor organization shall be resolved by the election officer.

C.     The election officer shall certify the labor organization as the exclusive collective bargaining representative of a unit of employees if the labor organization has received the support of a majority of the Eligible Employees in a secret ballot election that the election officer determines to have been conducted fairly. The numerical threshold for certification is fifty percent (50%) of the Eligible Employees plus one. If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or union, the election officer may order a re-run election. If the election officer determines that there was the commission of serious Unfair Labor Practices by the Tribe, or in the event the union made the offer provided for in Section 3-207(B) that the Tribe violated its obligations under Section 3-207(C), that interferes with the election process and precludes the holding of a fair election, and the labor organization is able to demonstrate that it had the support of a majority of the employees in the unit at any time before or during the course of the Tribe's misconduct, the election officer shall certify the labor organization as the exclusive bargaining representative.

D.     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel mutually chosen by both parties, provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

E.     A union which loses an election and has exhausted all dispute remedies related to the election may not invoke any provisions of this Ordinance at that particular casino or related facility until one (1) year after the election was lost.

### SECTION 3-211    COLLECTIVE BARGAINING IMPASSE

A.     Upon recognition, the Tribe and the union will negotiate in good faith for a collective bargaining agreement covering bargaining unit employees represented by the union.

B.     Except where the union has made the written offer set forth in Section 3-207(B), if collective bargaining negotiations result in impasse, the union shall have the right to strike. Strike-related picketing shall not be conducted on Indian lands as defined in 25 U.S.C. § 2703(4).

C.     Where the union makes the offer set forth in Section 3-207(B), if collective bargaining negotiations result in impasse, the matter shall be resolved as set forth in Section 3-213(C).

## SECTION 3-212    DECERTIFICATION OF BARGAINING AGENT

A.     The filing of a petition signed by thirty percent (30%) or more of the Eligible Employees in a bargaining unit seeking the decertification of a certified union, will result in a secret ballot election.  The election officer shall make a determination as to whether the required thirty percent (30%) showing has been made within one (1) working day after the submission of authorization cards.  If the election officer determines the required thirty percent (30%) showing of interest has been made, the election officer shall issue a notice of election.  The election shall be concluded within thirty (30) calendar days of the issuance of the notice of election.

B.     The election shall be conducted by an election officer by secret ballot pursuant to procedures set forth in a consent election agreement in substantially the same form as Attachment 1.  The election officer shall be a member of the Tribal Labor Panel chosen in the same manner as a single arbitrator pursuant to the dispute resolution provisions herein at Section 3-213(B)(2).  All questions concerning the decertification of the union shall be resolved by an election officer.  The election officer shall be chosen upon notification to the Tribe and the union of the intent of the Eligible Employees to present a decertification petition, and the same election officer shall preside thereafter for all proceedings under the request for decertification; provided however that if the election officer resigns, dies or is incapacitated for any other reason from performing the functions of this office, a substitute election officer shall be selected in accordance with the dispute resolution provisions herein.

C.     The election officer shall order the labor organization decertified as the exclusive collective bargaining representative if a majority of the Eligible Employees support decertification of the labor organization in a secret ballot election that the election officer determines to have been conducted fairly.  The numerical threshold for decertification is fifty percent (50%) of the Eligible Employees plus one (1).  If the election officer determines that the election was conducted unfairly due to misconduct by the Tribe and/or employer or the union the election officer may order a re-run election or dismiss the decertification petition.

D.     A decertification proceeding may not begin until one (1) year after the certification of a labor union if there is no collective bargaining agreement.  Where there is a collective bargaining agreement, a decertification petition may only be filed no more than ninety (90) days and no less than sixty (60) days prior to the expiration of a collective bargaining agreement.  A decertification petition may be filed any time after the expiration of a collective bargaining agreement.

E.     The Tribe or the union may appeal within five (5) days any decision rendered after the date of the election by the election officer to a three (3) member panel of the Tribal Labor Panel chosen in accordance with Section 3-213(C), provided that the Tribal Labor Panel must issue a decision within thirty (30) days after receiving the appeal.

8

## SECTION 3-213    BINDING DISPUTE RESOLUTION MECHANISM

A.    All issues shall be resolved exclusively through the binding dispute resolution mechanisms herein.

B.    The method of binding dispute resolution shall be a resolution by the Tribal Labor Panel, consisting of ten (10) arbitrators appointed by mutual selection of the parties which panel shall serve all tribes that have adopted this Ordinance. The Tribal Labor Panel shall have authority to hire staff and take other actions necessary to conduct elections, determine units, determine scope of negotiations, hold hearings, subpoena witnesses, take testimony, and conduct all other activities needed to fulfill its obligations under this Ordinance.

    1.    Each member of the Tribal Labor Panel shall have relevant experience in federal labor law and/or federal Indian law with preference given to those with experience in both. Names of individuals may be provided by such sources as, but not limited to, Indian Dispute Services, Federal Mediation and Conciliation Service, and the American Academy of Arbitrators.

    2.    Unless either party objects, one (1) arbitrator from the Tribal Labor Panel will render a binding decision on the dispute under the Ordinance. If either party objects, the dispute will be decided by a three (3)-member panel, unless arbitrator scheduling conflicts prevent the arbitration from occurring within thirty (30) days of selection of the arbitrators, in which case a single arbitrator shall render a decision. If one (1) arbitrator will be rendering a decision, five (5) Tribal Labor Panel names shall be submitted to the parties and each party may strike no more than two (2) names. If the dispute will be decided by a three (3)-member panel, seven (7) Tribal Labor Panel names will be submitted and each party can strike no more than two (2) names. A coin toss shall determine which party may strike the first name. The arbitrator will generally follow the American Arbitration Association's procedural rules relating to labor dispute resolution. The arbitrator must render a written, binding decision that complies in all respects with the provisions of this Ordinance within thirty (30) days after a hearing.

C.    1.    Upon certification of a union in accordance with Section 3-210 of this Ordinance, the Tribe and union shall negotiate for a period of ninety (90) days after certification. If, at the conclusion of the ninety (90)-day period, no collective bargaining agreement is reached and either the union and/or the Tribe believes negotiations are at an impasse, at the request of either party, the matter shall be submitted to mediation with the Federal Mediation and Conciliation Service. The costs of mediation and conciliation shall be borne equally by the parties.

    2.    Upon appointment, the mediator shall immediately schedule meetings at a time and location reasonably accessible to the parties. Mediation shall proceed for a period of thirty (30) days. Upon expiration of the thirty (30)-day period, if the parties do not resolve the issues to their mutual satisfaction, the mediator shall certify that the mediation process has been exhausted. Upon mutual agreement of the parties, the mediator may extend the mediation period.

9

      3.     Within twenty-one (21) days after the conclusion of mediation, the mediator shall file a report that resolves all of the issues between the parties and establishes the final terms of a collective bargaining agreement, including all issues subject to mediation and all issues resolved by the parties prior to the certification of the exhaustion of the mediation process.  With respect to any issues in dispute between the parties, the report shall include the basis for the mediator's determination.  The mediator's determination shall be supported by the record.

D.    In resolving the issues in dispute, the mediator may consider those factors commonly considered in similar proceedings.

E.    Either party may seek a motion to compel arbitration or a motion to confirm or vacate an arbitration award, under this Section 3-213, in the appropriate state superior court, unless a bilateral contract has been created in accordance with Section 3-207, in which case either party may proceed in federal court.  The Tribe agrees to a limited waiver of its sovereign immunity for the sole purpose of compelling arbitration or confirming or vacating an arbitration award issued pursuant to the Ordinance in the appropriate state superior court or in federal court.  The parties are free to put at issue whether or not the arbitration award exceeds the authority of the Tribal Labor Panel.

---

Legislative History:

| | |
|---|---|
| 2/14/2019 | Submitted for public review by Tribal Council Resolution No. 2019-11 by vote of 7 for, 0 against, 0 abstaining. |
| 2/20/2019 | Thirty (30) day public review phase began. |
| 3/7/2019 | Public hearing held at Tribal Office. |
| 3/21/2019 | Thirty (30) day public review phase ended. |
| 3/28/2019 | Seven (7) day final review phase began. |
| 4/18/2019 | Tribal Council passed the Ordinance by Resolution No. 2019-23 by vote of 5 for, 0 against, 0 abstaining. |
| 4/18/2019 | Chairperson concurrence; the Ordinance is codified as Chapter 3 of the Labor Code. |

**Attachment 1**

CONSENT ELECTION AGREEMENT PROCEDURES

   Pursuant to the Tribal Labor Relations Ordinance adopted pursuant to section 12.10 of the compact, the undersigned parties hereby agree as follows:

   1. Jurisdiction.  Tribe is a federally recognized Indian tribal government subject to the Ordinance; and each employee organization named on the ballot is an employee organization within the meaning of the Ordinance; and the employees described in the voting unit are Eligible Employees within the meaning of the Ordinance.

   2. Election.  An election by secret ballot shall be held under the supervision of the elections officer among the Eligible Employees as defined in Section 3-202 of the Ordinance of the Tribe named above, and in the manner described below, to determine which employee organization, if any, shall be certified to represent such employees pursuant to the Ordinance.

   3. Voter Eligibility.  Unless otherwise indicated below, the eligible voters shall be all Eligible Employees who were employed on the eligibility cutoff date indicated below, and who are still employed on the date they cast their ballots in the election, i.e., the date the voted ballot is received by the elections officer. Eligible Employees who are ill, on vacation, on leave of absence or sabbatical, temporarily laid off, and employees who are in the military service of the United States shall be eligible to vote.

   4. Voter Lists.  The Tribe shall electronically file with the elections officer a list of eligible voters within two (2) business days after receipt of a Notice of Election.

   5. Notice of Election.  The elections officer shall serve Notices of Election on the Tribe and on each party to the election.  The Notice shall contain a sample ballot, a description of the voting unit and information regarding the balloting process.  Upon receipt, the Tribe shall post such Notice of Election conspicuously on all employee bulletin boards in each facility of the employer in which members of the voting unit are employed.  Once a Notice of Election is posted, where the union has made the written offer set forth in Section 3-207(B) of the Tribal Labor Relations Ordinance of 2019, the Tribe shall continue to refrain from publishing or posting pamphlets, fliers, letters, posters or any other communication which should be interpreted as criticism of the union or advises employees to vote "no" against the union.  The Tribe shall be free at all times to fully inform employees about the terms and conditions of employment it provides to employees and the advantages of working for the Tribe.

   6. Challenges.  The elections officer or an authorized agent of any party to the election may challenge, for good cause, the eligibility of a voter.  Any challenges shall be made prior to the tally of the ballots.

   7. Tally of Ballots.  At the time and place indicated below, ballots shall be co-mingled and tabulated by the elections officer.  Each party shall be allowed to station an authorized agent at the ballot count to verify the tally of ballots.  At the conclusion of the counting, the elections officer shall serve a Tally of Ballots on each party.

8. Objections and Post-election Procedures. Objections to the conduct of the election may be filed with the elections officer within five (5) calendar days following the service of the Tally of Ballots. Service and proof of service is required.

9. Runoff Election. In the event a runoff election is necessary, it shall be conducted at the direction of the elections officer.

10. Wording on Ballot. The choices on the ballot shall appear in the wording and order enumerated below.

>   FIRST: [***]
>   SECOND: [***]
>   THIRD: [***]

11. Cutoff Date for Voter Eligibility: [***]

12. Description of the Balloting Process. A secret ballot election will take place within thirty (30) days after delivery of the voter list referenced in paragraph 4. The employer will determine the location or locations of the polling places for the election. There must be at least one (1) neutral location (such as a high school, senior center, or similar facility) which is not within the gaming facility and employees must also be afforded the option of voting by mail through procedures established by the elections officer. Such procedures must include provisions that provide meaningful protection for each employee's ability to make an informed and voluntary individual choice on the issue of whether to accept or reject a union. Such procedures must also ensure that neither employer nor union representatives shall observe employees personally marking, signing, and placing their ballot in the envelope. Only voters, designated observers and the election officer or supporting staff can be present in the polling area. Neither employer nor union representatives may campaign in or near the polling area. If the election officer or supporting staff questions an employee's eligibility to vote in the election, the ballot will be placed in a sealed envelope until eligibility is determined. The box will be opened under the supervision of the election officer when voting is finished. Ballots submitted by mail must be received by the elections officer no later than the day of the election in order to be counted in the official tally of ballots.

13. Voter List Format and Filing Deadline: Not later than two (2) business days after receipt of the Notice of Election, the Tribe shall file with the elections officer, at [**address**], an alphabetical list of all eligible voters including their job titles, work locations and home addresses.

Copies of the list shall be served concurrently on the designated representative for the [***]; proof of service must be concurrently filed with elections officer.

In addition, the Tribe shall submit to the elections officer on or before [***], by electronic mail, a copy of the voter list in an Excel spreadsheet format, with columns labeled as follows: First Name, Last Name, Street Address, City, State, and Zip Code. Work locations and job titles need not be included in the electronic file. The file shall be sent to [***].

14. Notices of Election: Shall be posted by the Tribe no later than [***].

   15. Date, Time and Location of Counting of Ballots:  Beginning at [**time**] on [**date**], at the [**address**].

   16. Each signatory to this Agreement hereby declares under penalty of perjury that s/he is a duly authorized agent empowered to enter into this Consent Election Agreement.

| (Name of Party) |
|---|
| By |
| (Title)                              (Date) |

| (Name of Party) |
|---|
| By |
| (Title)                              (Date) |

| (Name of Party) |
|---|
| By |
| (Title)                              (Date) |

| (Name of Party) |
|---|
| By |
| (Title)                              (Date) |

Date approved: _____

[**Author**]
Elections Officer

# Wilton Rancheria



9728 Kent Street, Elk Grove, CA 95624

## Tribal Council Resolution No. 2019-23
## RESOLUTION TO ENACT THE TRIBAL LABOR RELATIONS ORDINANCE OF 2019

**WHEREAS,** Wilton Rancheria ("Tribe") is a federally-recognized Indian tribe eligible for all rights and privileges afforded to recognized Native American tribes; and

**WHEREAS,** Wilton Rancheria adopted the Constitution of Wilton Rancheria ("Constitution") on November 12, 2011; and

**WHEREAS,** Article VI, Section 2 of the Constitution authorizes the Tribal Council to make the Tribe's laws; and

**WHEREAS,** Article VI, Section 2(a) of the Constitution grants the Tribal Council the power to make all laws, including resolutions, codes and statutes; and

**WHEREAS,** Article VI, Section 2(c) of the Constitution grants the Tribal Council the power to pass laws regulating the Tribe's elections, enrollment, and employment, and all other matters so long as those laws are consistent with the Constitution; and

**WHEREAS,** the Tribal Council Organization Act of 2012 provides that acts shall be the formal laws passed by the Tribal Council in development of the Tribe's permanent body of law, 4 WRC § 1-303(A); and

**WHEREAS,** the Tribal Council Organization Act of 2012 provides that all acts and amendments shall go through a legislation process consisting of an internal review phase, a public review phase, and a final review phase, 4 WRC § 1-305; and

**WHEREAS,** the Tribal Council Organization Act of 2012 provides that during a thirty (30) day public review phase, the Tribal Council shall solicit comments from members of the public regarding a proposed act and shall hold at least one (1) public hearing, 4 WRC § 1-307; and

**WHEREAS,** the Tribal Council Organization Act of 2012 provides that the final version of a proposed act shall be submitted to each member of the Tribal Council for a final review period of no less than seven (7) days, 4 WRC § 1-308(B); and

**WHEREAS,** pursuant to Resolution No. 2019-11, the Tribal Council submitted the proposed Tribal Labor Relations Ordinance of 2019 for public review from February 20, 2019 to March 21, 2019; and

**WHEREAS,** the Tribal Council conducted a public hearing regarding the proposed Tribal Labor Relations Ordinance of 2019 on March 7, 2019 at the Tribe's office; and

**WHEREAS,** the proposed Tribal Labor Relations Ordinance of 2019 was submitted to each member of the Tribal Council for final review on March 28, 2019.

**NOW BE IT THEREFORE RESOLVED,** the Tribal Council does hereby enact the Tribal Labor Relations Ordinance of 2019; and

**BE IT FINALLY RESOLVED,** the Tribal Chairperson shall fully and faithfully execute, and take any and all action necessary to implement, the Tribal Labor Relations Ordinance of 2019.

### CERTIFICATION

It is hereby certified that the foregoing Resolution was adopted by an affirmative vote of 5 for, 0 against, and 0 abstaining, presented for approval on April 18th, 2019, pursuant to the authority contained within the Constitution of Wilton Rancheria.

Dated this 18th day of April 2019.

*[signature]*
Tonya Caldwell
Tribal Council Spokesperson

Attest:

*[signature]*
Jesus Tarango
Vice-Chairperson

107819464.1