Shaneeda Jaffer (CA 253449)
Ruby H. Kazi (CA 243872)
Carlo J. Lipson (CA 351153)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile: 628.221.5828
sjaffer@beneschlaw.com
rkazi@beneschlaw.com
clipson@beneschlaw.com

*Attorneys for Plaintiff*
*WILTON RANCHERIA, CALIFORNIA*

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF CALIFORNIA**

WILTON RANCHERIA, CALIFORNIA,

Plaintiff,

v.

UNITE HERE,

Defendant.

Case No. 2:25-cv-02413-DJC-SCR

**WILTON RANCHERIA'S REPLY TO UNITE HERE'S OPPOSITION TO MOTION TO VACATE ARBITRATION AWARD**

Date: December 4, 2025
Time: 1:30 p.m.
Judge: The Hon. Daniel J. Calabretta

## I. INTRODUCTION

Plaintiff Wilton Rancheria, California (the "Tribe"), by and through its undersigned counsel, respectfully submits this reply to Defendant UNITE HERE's (the "Union") Opposition to the Tribe's Motion to Vacate the Arbitration Award and Opinion (the "Award") issued on June 17, 2024, by Arbitrator Anthony Miller. As outlined in the Motion to Vacate Arbitration Award ("Motion to Vacate") and discussed in further detail below, Arbitrator Miller improperly ruled that a private agreement, the August 2017 Memorandum of Agreement (the "MOA"), is controlling over a Tribal law, the Tribal Labor Relations Ordinance (the "TLRO"). His ruling contravened well-established public policy and demonstrated a disregard for the unshakable sovereignty and statutory rights of the Tribe. The Union's opposition rests on the flawed premise that the MOA can override a later-enacted TLRO. This position disregards the Tribe's inherent sovereign authority, misrepresents the explicitly negotiated express language in the MOA that deferred to the TLRO's recognition framework which governs labor relations at the casino, and improperly treats Arbitrator Miller's adoption of Arbitrator Brand's reasoning as binding precedent. Because both Arbitrators Brand and Miller exceeded their authority and the Award is fundamentally flawed, the Tribe respectfully requests that this Court vacate or modify the Award.

## II. ARGUMENT

### A. SECTION 301 OF THE LABOR MANAGEMENT RELATIONS ACT IS NOT APPLICABLE.

Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C § 185, does not confer jurisdiction here because the dispute does not arise from a collective bargaining agreement ("CBA") or an agreement that "importantly and directly" affects the employment relationship.

The Union's reliance on Section 301 and the cases cited is misplaced, especially since the dispute at issue does not arise from a CBA or a labor contract "importantly and directly" affecting the employment relationship. 29 U.S.C § 185; *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (A controversy that importantly and directly affects the employment relationship falls within Section 301.). *Textile Workers v.*

*Lincoln Mills of Ala.*, 353 U.S. 448, 449-52 (1957) (CBA dispute related to employee grievances); *Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550, 551 (1957) (CBA dispute related to terminated employees); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 595-96 (1960) (expired CBA dispute and reinstatement); *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 505-510 (2001) (CBA dispute related to collusion); *Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1202-1204 (9th Cir. 1989) (*en banc*) (CBA dispute and employee reinstatement).

In this case, this dispute does not involve a CBA, nor is *Retail Clerks'* "importantly and directly affecting" standard met since the dispute is related to the governing framework for union recognition, not related to wages, discipline, or job duties—at best indirectly affecting employee rights. *Retail Clerks Int'l Ass'n, supra*, 369 U.S. 17 at 28.

### 1. **<u>Section 301 Is Not Applicable when the Dispute Is Primarily Representational.</u>**

Section 301 is not applicable since it does not extend to disputes that can be characterized as primarily representational, like this one. Federal courts have drawn a clear jurisdictional line and "should look at whether the major issues to be decided ... can be characterized as primarily representational or primarily contractual." *Garcia v. Bradshaw*, 24-CV-03068-JSC, 2025 WL 964685, at *3 (N.D. Cal. Mar. 31, 2025); *United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Steamfitters & Refrigeration Union, Local 342, AFL-CIO v. Valley Engineers*, 975 F.2d 611, 613-614 (9th Cir. 1992), as amended (Oct. 16, 1992) (*citations omitted*) ("[C]ongress did not intend by enacting Section 301 to vest in the courts initial authority to consider and pass upon questions of representation and determination of appropriate bargaining units.").

The additional Section 301 cases the Union cites are inapplicable because this dispute centers around union recognition procedures—a purely representational issue, not a contractual one. *UNITE HERE Local 30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 699-704 (9th Cir. 2022) (addressed whether the TLRO was a binding contract and whether there was a breach—a classic contractual issue); *Hotel Employees, Rest. Employees Union, Local 2 v.*

*Marriott Corp*., 961 F.2d 1464, 1468-69 (9th Cir. 1992) (enforced the clear contractual obligations—hiring and employer neutrality, but union recognition was treated as representational); *Serv. Employees Int'l Union v. St. Vincent Med. Ctr*., 344 F.3d 977, 982-986 (9th Cir. 2003) (focused on employer conduct during union formation, not recognition procedures). Judge Mueller in her 2024 Order has already considered and rejected the very cases the Union relies on, concluding that the Federal Arbitration Act (FAA)—not Section 301—is the proper framework for this dispute. *Unite Here v. Wilton Rancheria*, 2:23-CV-02767-KJM-SCR, 2024 WL 5047033, at *5-6 (E.D. Cal. Dec. 9, 2024). Thus, Section 301 does not apply here.

**2. The Award Fails to Draw its Essence from the MOA Under Section 301.**

Even if Section 301 applied, the Award fails to draw its essence from the MOA. Section 301 gives an arbitrator deference; however, there are exceptions to the general deference: "(1) when the award does not 'draw its essence from the collective bargaining agreement'; (2) when the arbitrator exceeds the scope of the issues submitted; and (3) when the award runs counter to public policy." *SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 924-25 (9th Cir. 1996) (awards must reflect a "plausible interpretation of the contract"). In cases where an arbitrator disregards "specific provisions" of a contract, the arbitration award is completely irrational and subject to vacatur. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1168 (9th Cir. 2019) ("the Arbitrator exceeded his authority and . . . [t]he Award disregarded specific provisions of the plain text in an effort to prevent what the Arbitrator deemed an unfair result. Such an award is 'irrational.'").

As stated in the Tribe's Motion to Vacate, Arbitrator Miller's Award failed to draw from the essence of the MOA by disregarding the critical language in paragraph 2 of the MOA that referenced and addressed the Compact's model Tribal Labor Relations Ordinance wherein the parties agreed that the TLRO governs labor relations at the Casino. Dkt. No. 1, ¶¶ 38-40. Both Arbitrators failed to address the MOA's explicit incorporation of the TLRO, making the award irrational and subject to vacatur.

Additionally, Arbitrators Brand and Miller exceeded their authority by disregarding the parties' intent and instead substituting their preferred recognition framework. This is not a case of interpreting ambiguity or resolving contractual silence—the MOA is clear: the TLRO governs labor relations at the Casino, displacing the card check provision in the MOA relied upon by the Award. An arbitration award based on personal notions that disregards the contract provision, or modifies unambiguous contract provisions, fails to draw its essence from the agreement and the award should be vacated. *Patten v. Signator Ins. Agency, Inc*., 441 F.3d 230, 235-237 (4th Cir. 2006) (award disregarding unambiguous language of the governing agreement fails to draw essence from agreement.).

**B. THE COURT SHOULD NOT ADOPT JUDGE MUELLER'S DECISION UPHOLDING THE BRAND AWARD.**

**1. <u>The Tribe Challenged Arbitrator Miller's Conclusion.</u>**

The Union's claim that the Tribe does not challenge Arbitrator Miller's conclusion regarding majority support under the MOA is misleading. The core of the dispute is which agreement governs—the MOA or TLRO—not whether the Union obtained majority support under the MOA.[1] The Tribe maintains that the TLRO supersedes the MOA and governs union recognition, which requires a secret ballot election. Thus, the Tribe is inherently contesting the legal validity of the MOA's card check process and the basis of Arbitrator Miller's conclusions—this procedural distinction goes to the heart of this dispute.

**2. <u>The Union's Estoppel Argument Is Premature.</u>**

This Court should not adopt Judge Mueller's decision upholding the Brand Award. The Union's assertion that the Tribe seeks to take "two bites at the same apple" misrepresents the procedural posture and misapplies the principles articulated in *Fund for Animals*. *Fund for Animals v. Lujan*, 962 F.2d 1391, 1398-99 (9th Cir. 1992) (The estoppel doctrines bar relitigating final judgments decided on the merits.). The Union's argument is premature because, as the Union concedes, the Ninth Circuit has not yet ruled on whether to affirm or vacate the Award.

[1] Regardless, and as the Union is well aware, the Tribe *does* contest the Union's assertion that it enjoys majority support of bargaining unit employees. The Tribe has made clear to the Union, through various correspondence, that it doubts the Union's assertion that it enjoys such majority support.

UNITE HERE's Opposition to Mot. to Vacate Arbitration Award, 7:16-20, *Wilton Rancheria v. UNITE HERE*, No. 2:25-cv-02413. Therefore, no preclusive effect can attach and the Tribe is not seeking to relitigate a resolved issue; until the Ninth Circuit renders its opinion, the Tribe may seek appropriate remedies without violating estoppel doctrines. *Fund for Animals v. Lujan*, 962 F.2d at 1398-99; *Collins v. D.R. Horton, Inc.*, 505 F.3d 874, 878 (9th Cir. 2007) (declining to apply estoppel where the underlying judgment was pending appeal).

### C. THE BRAND AWARD TAKES THE MULTIFACETED MOA AND REDUCES IT TO NOTHING MORE THAN A CARD CHECK REGULATION.

Contrary to the Union's claim, Arbitrator Brand's Award is not "well-reasoned." Arbitrator Brand and the Union treat the MOA as controlling despite its express reference to the TLRO and the Tribe's subsequent enactment of the TLRO. Arbitrator Brand failed to reconcile the MOA's reference to the TLRO and its specific union-recognition procedures. In its Opposition, the Union references Arbitrator Brand's claim that the Tribe's interpretation turns the card check provision in paragraph 7 of the MOA into surplusage, yet by disregarding the explicitly-referenced TLRO and subsequent enactment, Arbitrator Brand turned this provision of the MOA, the reference to the TLRO and its union recognition mechanism, into surplusage. By adopting that reasoning wholesale, and without critical examination, Arbitrator Miller made the same fatal error.

The reference and later enactment of the TLRO signaled the parties' intention for it to govern labor relations at the Casino. Ignoring it strips the TLRO of its legal force and distorts the agreement's structure, reducing the reference to a meaningless provision. Indeed, the MOA anticipated evolving recognition terms based on the TLRO.

Additionally, Arbitrator Brand's reliance on the Union negotiator's testimony—that the "whole purpose" of the negotiation was to secure card checks—improperly elevated a single subjective provision, and a single subjective witness's testimony, over the MOA's objective text. The MOA is a multifaceted agreement not solely about card check recognition. Reducing it to one goal ignores the broad range of mutual commitments and strategic alignment between the Tribe and Union. As held in *Ficks Reed Co.*, ignoring an incorporated and enacted agreement renders the arbitration award unenforceable under Section 301 and fails to draw the essence

from the agreement. *Ficks Reed Co. v. Local Union 112 of Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 965 F.2d 123, 125-26 (6th Cir. 1992). Both Arbitrators' failure to acknowledge the TLRO's authority to govern labor relations at the Casino conflicts with the MOA's express terms.

### D. IGNORING THE TLRO AND ELEVATING THE CARD CHECK PROVISION OF THE MOA IS A MANIFEST DISREGARD OF THE TLRO AND SOVEREIGN AUTHORITY.

#### 1. <u>The TLRO Is the Governing Agreement.</u>

As stated in the Tribe's Motion to Vacate, the TLRO is governing law. Arbitrator Brand's decision to ignore its election procedures and favor card check recognition contradicts the TLRO's clear requirements and is a manifest disregard of the TLRO and tribal sovereign authority. The MOA cannot override the TLRO, and Arbitrator Miller's consent to rewrite the MOA's provisions in a manner that does so amounts to a manifest disregard of Tribal law.

#### 2. <u>Enacting the TLRO Is an Exercise of Sovereign Authority.</u>

The Union claims that the Tribe surrendered its authority by agreeing to adopt the TLRO unchanged, when, in reality, enacting the TLRO through its legislative process was an exercise of the Tribe's sovereignty. When the Tribe entered into the Compact with the State and enacted the TLRO, it did not surrender its sovereign authority, but exercised it. Specifically, the Tribe supported the secret ballot election language in the TLRO exhibited in the Compact as a way to ensure the employees' voices are heard and rights are protected through anonymity. Tribes, under their sovereign authority, have the power to enter into compacts and agreements with other sovereign governments and entities, and to create and implement their own laws and ordinances. Tribal adoption of an external regulatory framework like the TLRO does not surrender tribal sovereignty; even where state and tribal substantive regulations differ or are similar to state law, concurrent exercise of authority is permitted. *White Mountain Apache Tribe v. State of Ariz., Dept. of Game & Fish*, 649 F.2d 1274, 1284-85 (9th Cir. 1981) ("Where valid state and tribal substantive regulations differ, both are enforceable."); *Pauma Band of Luiseno Mission Indians of Pauma & Yuima Reservation v. Unite Here Int'l Union*, 390 F. Supp. 3d 1219, 1225 (S.D. Cal. 2019) (The Tribe adopted a TLRO identical to the model TLRO). The Tribe

adopting the TLRO without changing a word is in line with what previous tribes have done, as outlined in a case the Union cites: *In re Indian Gaming Related Cases.* There, a model Compact and model TLRO were at issue; the State indicated the tribe must adopt a labor ordinance identical to the TLRO in order for that ordinance to be acceptable to the State. *In re Indian Gaming Related Cases*, 331 F.3d 1094, 1107 (9th Cir. 2003). Implementing the TLRO, even as a condition of the Compact, is a reflection of authority, not a surrender of it.[2] The TLRO does not transfer all control to the State, but affirms the Tribe's power to regulate labor relations on tribal lands. Enacting it was an act of tribal sovereignty, not a surrender of it.

The Tribe retained authority to regulate labor relations at the Casino, including how the TLRO is interpreted, adopted, and administered. Enacting the TLRO did not transfer enforcement or authority to the State, but affirmed the Tribe's independent power. Implementing the TLRO, even as a condition of the Compact, is a reflection of authority. *Id*. at 1116 ("[t]he TLRO provides only modest organizing rights to tribal gaming employees and contains several provisions protective of tribal sovereignty.").

The Union mischaracterizes the Tribe's sovereign authority argument. The Tribe does not argue that the Award should be vacated simply "because the Arbitrator failed to treat the TLRO as solely a product of the Tribe's sovereign authority and not part of the Compact." *See* Dkt. No. 7, 14:9-12. The Tribe does not assert only that the TLRO is a product of tribal sovereignty, but rather that the Arbitrator failed to properly acknowledge the TLRO as the enacted governing agreement. This mischaracterization distorts the Tribe's actual position, that the TLRO—as enacted through the formal tribal legislative process—was acknowledged in the MOA and governs. Arbitrator Miller, and Arbitrator Brand before him, recognized this process and the existence of the TLRO, but disregarded it in favor of a private contract—the MOA, and failed to treat the TLRO with the force of law The crux of the Tribe's argument centers on the legal status of the TLRO, not its independence from federal laws or frameworks. The Union's speculating about federal preemption under the NLRA and federal laws is inapplicable since the

---

[2] The Tribe's Compact addressed the specific relationship between the Tribe and the State and was not intended to be a model compact or a template for compacts with other tribes. Entering into a compact with the State is an act of sovereignty even where the tribe agrees to certain provisions the State includes in their model compacts.

Tribe's argument does not hinge on independence or preemption. Thus, Arbitrator Miller's Award constitutes a manifest disregard of the governing organizing framework—the TLRO. In *In re Indian Gaming Related Cases*, *supra*, the Ninth Circuit recognized "[t]he TLRO provides only modest organizing rights to tribal gaming employees and contains several provisions protective of tribal sovereignty." *In re Indian Gaming Related Cases*, 331 F.3d at 1116. Indeed, the Tribe exercised its sovereign authority when passing the TLRO and intended that the law would be "protective of tribal sovereignty."

**E. THE ARBITRATORS' AUTHORITY WAS LIMITED TO INTERPRETING THE MOA IN LIGHT OF THE TLRO.**

By agreeing to arbitration, the Tribe did not authorize the Arbitrators to override and invalidate the TLRO. The TLRO is binding tribal law, and Arbitrator Brand's role was to interpret the MOA in light of it—not substitute the MOA for the TLRO. Whether the TLRO expressly prohibits card checks is irrelevant—the MOA is not the governing framework. The TLRO's enactment without including the card check provision effectively foreclosed that method in favor of a secret ballot election.

As Arbitrator Brand and the Union acknowledge, the TLRO and the secret ballot process is aligned with the NLRB doctrine. 29 U.S.C. § 159. This process is voluntary, and employers cannot be forced to accept it. Indeed, any voluntary submission to the card check mechanism was superseded when the Tribe enacted the TLRO. Treating the MOA's card check as an alternative pathway undermines the TLRO's authority. The TLRO is not one of many options—it is the exclusive law governing labor relations on Tribal land.

When Arbitrator Brand placed the MOA above the TLRO, and when Arbitrator Miller adopted that reasoning without question, they effectively nullified the TLRO's election procedures in favor of a private agreement. The TLRO outlines the sole method for determining union representation, and as such the card check-only method is not authorized by the TLRO. Upholding the Award would impose obligations on the Tribe that are not found in the TLRO, which is the law governing labor relations at the Casino.

///

Arbitrator Brand's conclusion that a general reference to the TLRO does not void the MOA's card check provision is incorrect. Paragraph 7 of the MOA cannot override the TLRO's election procedures. The TLRO's reference is not general—it acknowledges specific rights under Tribal law. The MOA was executed before the TLRO was passed as a Tribal law and, as such, cannot be treated as a valid substitution for the TLRO's election procedures. Once the TLRO was enacted, it established the exclusive and valid method of union recognition. The Arbitrators' reliance on the MOA, even when considering the MOA as a whole, fails to account for the TLRO's specific provisions and the Tribe's sovereign power to legislate.

Arbitrator Brand's decision imposed obligations in direct conflict with the TLRO's comprehensive regulatory process. As the *Fick Reed Co.* Court held, ignoring an incorporated and enacted agreement renders the arbitration award unenforceable. *See Ficks Reed Co. supra*, 965 F.2d at 125-26. Arbitrator Brand's reading of the MOA and elevation of it over the TLRO creates a legal incompatibility. If the Award truly drew its essence from the MOA, it would elevate the TLRO, which the MOA anticipated. Once the TLRO was enacted, it became the controlling authority, as the parties intended. Any procedure inconsistent with the TLRO does not draw from the essence of the agreement and lacks authority. Arbitrators Brand and Miller cannot treat Tribal law as background context, while enforcing a subordinated private agreement. The TLRO is the law.

**F. THE CONTINUING OPERATION OF THE CASINO IS NOT AT ISSUE.**

The Tribe is not making the argument nor asserting that the Award negates or reverses the Compact's ratification. Rather, it maintains that the TLRO language was negotiated and agreed upon in the Compact before the MOA was signed, enacted as sovereign Tribal law as agreed upon in the Compact after the MOA, and is the controlling framework for union recognition. The MOA references the TLRO in section 2 to reflect the parties' intent that the TLRO would "govern labor relations" at the casino, precisely as the clear language states. The Award disregards the TLRO's authority and imposes obligations inconsistent with enacted Tribal law, exceeding the authority of the Arbitrator.

///

## III. CONCLUSION

For the reasons set forth above, the Tribe respectfully requests that this Court vacate or modify the Award and grant the Tribe its reasonable costs and any additional relief that is necessary and proper.

Dated: November 3, 2025

Respectfully submitted,

*/s/ Shaneeda Jaffer*
SHANEEDA JAFFER (CA 253449)
Benesch, Friedlander, Coplan & Aronoff LLP

*Attorneys for Plaintiff*
*WILTON RANCHERIA, CALIFORNIA*