Shaneeda Jaffer (CA 253449)
Ruby H. Kazi (CA 243872)
Carlo J. Lipson (CA 351153)
Benesch, Friedlander, Coplan & Aronoff LLP
100 Pine Street, Suite 3100
San Francisco, California 94111
Telephone: 628.600.2250
Facsimile:  628.221.5828
sjaffer@beneschlaw.com
rkazi@beneschlaw.com
clipson@beneschlaw.com

*Attorneys for Plaintiff*
*WILTON RANCHERIA, CALIFORNIA*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILTON RANCHERIA, CALIFORNIA, | Case No. 2:25-cv-02413-DJC-SCR |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANT UNITE HERE'S MOTION TO CONFIRM ARBITRATION AWARD AND COMPEL INTEREST ARBITRATION** |
| v. | |
| UNITE HERE, | Date:      January 8, 2026 |
| Defendant. | Time:      1:30 p.m. |
| | Judge:     Hon. Daniel J. Calabretta |

1

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ...............................................................................1

III.   LEGAL ARGUMENT .........................................................................................6

     A.   SECTION 301 DOES NOT CONFER JURISDICTION IN THIS
         MATTER. ...........................................................................................................6

     B.   THE TRIBE'S LIMITED CONSENT TO ARBITRATION DOES NOT
         CONFER JURISDICTION UNDER SECTION 301 AND IS NOT A
         BLANKET WAIVER. ........................................................................................8

     C.   EVEN IF SECTION 301 APPLIES, THE MILLER AWARD SHOULD
         NOT BE CONFIRMED..................................................................................9

         1.   Pursuant to the Federal Arbitration Act, the Miller Award Should
             Not Be Confirmed.........................................................................................9

         2.   The Award Fails to Draw its Essence from the Agreement. .................... 10

         3.   The Award Fails to Acknowledge and Follow a Valid, Duly
             Enacted Tribal Law. ................................................................................. 11

         4.   Arbitrator Miller's Award Constitutes a Manifest Disregard of the
             TLRO. ...................................................................................................... 12

     D.   INTEREST ARBITRATION CANNOT BE COMPELLED ................................... 14

         1.   Recognition Did Not Occur on June 17, 2025. ......................................... 14

         2.   The MOA Has Expired. ............................................................................ 16

IV.    CONCLUSION.................................................................................................. 18

i

1

<u>**TABLE OF AUTHORITIES**</u>

2

**Page(s)**

3

**Cases**

4

*Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*,

5
    913 F.3d 1162 (9th Cir. 2019) ...................................................................... 10, 12

6
*Ass'n of W. Pulp & Paper Workers, Loc. 78 v. Rexam Graphic, Inc.*,
    221 F.3d 1085 (9th Cir. 2000) ............................................................................. 10

7

8
*AT&T Technologies, Inc. v. Communications Workers*,
    475 U.S. 643 (1986) ............................................................................................. 8

9

10
*Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty.*
    *v. Celotex Corp.*,
    708 F.2d 488 (9th Cir. 1983) ......................................................................... 13, 14

11

12
*C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*,
    532 U.S. 411 (2001) ............................................................................................. 8

13

14
*Coast Hotels and Casinos, Inc. v. Culinary Workers Union Local 226*,
    35 F.Supp.2d 765 (D. Nev. 1999) ...................................................................... 17

15
*Evans Energy Partners, LLC v. Seminole Tribe of Florida, Inc.*,
    21-13493, 2022 WL 2784604 (11th Cir. July 15, 2022) ....................................... 8

16

17
*Ficks Reed Co. v. Local Union 112 of Int'l Union, Allied Indus. Workers of Am., AFL-CIO*,
    965 F.2d 123 (6th Cir. 1992) ......................................................................... 11, 12

18

19
*First Am. Casino Corp. v. E. Pequot Nation*,
    541674, 2001 WL 950243 (Conn. Super. Ct. July 16, 2001) ............................... 8

20
*Garcia v. Bradshaw*,
    24-CV-03068-JSC, 2025 WL 964685 (N.D. Cal. Mar. 31, 2025) ........................ 7

21

22
*Goodall-Sanford, Inc. v. United Textile Workers Local 1802*,
    353 U.S. 550 (1957) ........................................................................................ 6, 8

23

24
*Hotel Employees, Rest. Employees Union, Local 2 v. Marriott Corp.*,
    961 F.2d 1464 (9th Cir. 1992) ............................................................................. 7

25
*Litton Fin. Printing Div. v. N.L.R.B.*,
    501 U.S. 190 (1991) ........................................................................................... 16

26

27
*NLRB v. Creative Food Design Ltd.*,
    852 F.2d 1295 (D.C. Cir. 1988) ......................................................................... 15

28

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**
**Case No. 2:25-cv-02413-DJC-SCR**

*Patten v. Signator Ins. Agency, Inc.*,
441 F.3d 230 (4th Cir. 2006)....................................................................................13

*Promenade Garage Corp.*,
314 NLRB 172 (1994)............................................................................................15

*Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*,
369 U.S. 17 (1962)..............................................................................................6, 7

*Santa Clara Pueblo v. Martinez*,
436 U.S. 49 (1978)..................................................................................................9

*Serv. Employees Int'l Union v. St. Vincent Med. Ctr.*,
344 F.3d 977 (9th Cir. 2003)....................................................................................7

*SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist.*
*Lodge 94, Local Lodge 311*,
103 F.3d 923 (9th Cir. 1996)..................................................................................10

*Sheet Metal Workers Int'l Ass'n Local No. 359 v. Madison Industries, Inc. of Arizona*,
84 F.3d 1186 (9th Cir. 1996)...........................................................................8, 9, 10

*South Bay Boston Management, Inc. v. UNITE HERE Local 26*,
587 F.3d 35 (1st Cir. 2009)................................................................................16, 17

*Stead Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*,
886 F.2d 1200 (9th Cir. 1989) (*en banc*)...................................................................6

*Stevens-Bratton v. TruGreen, Inc*,
675 F. App'x 563 (6th Cir. 2017)............................................................................17

*Textile Workers v. Lincoln Mills of Ala.*,
353 U.S. 448 (1957).........................................................................................6, 8, 9

*The Basketball Mktg. Co. v. Urbanworks Ent.*,
No. CIV.A. 04-CV-3179, 2004 WL 2590506 (E.D. Pa. Nov. 10, 2004)................17

*Unite Here Loc. 19 v. Picayune Rancheria of Chukchansi Indians*,
101 F.Supp.3d 929 (E.D. Cal. 2015).................................................................15, 16

*UNITE HERE Local 30 v. Sycuan Band of the Kumeyaay Nation*,
35 F.4th 695 (9th Cir. 2022)................................................................................7, 8

*Unite Here Local 30 v. Wilton Rancheria*,
No. 25-34 (9th Cir. 2025) (DE # 13.1)......................................................................4

*Unite Here v. Wilton Rancheria*,
2:23-CV-02767-KJMSCR, 2024 WL 5047033 (E.D. Cal. Dec. 9, 2024)..................7

*United Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Steamfitters & Refrigeration Union, Local 342, AFL-CIO v. Valley Engineers*, 975 F.2d 611 (9th Cir. 1992) .................................................................................. 7

*United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Products, Litton Sys., Inc.*, 704 F.2d 393 (8th Cir. 1983) ..................................................... 11, 13, 16, 17

*United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) ................................................................................ 6, 8, 10

**Statutes**

Federal Arbitration Act

    9 U.S.C. § 9 ..................................................................................................... 9

    9 U.S.C. § 10(a)(4) ...................................................................................... 7, 9

Indian Gaming Regulatory Act

    25 U.S.C. § 2701 ........................................................................................... 1

    25 U.S.C. § 2710(d)(3) ................................................................................. 2

Labor Management Relations Act

    29 U.S.C § 185 ...................................................................................... *passim*

National Labor Relations Act

    29 U.S.C. § 151 ............................................................................................. 8

Tribal Labor Relations Ordinance of 2019 .......................................................... *passim*

I.    **INTRODUCTION**

Plaintiff Wilton Rancheria, California (the "Tribe"), by and through its undersigned counsel, respectfully submits this opposition to Defendant UNITE HERE's (the "Union") Motion to Confirm the Arbitration Award and Compel Interest Arbitration regarding the arbitration award issued on June 17, 2024 by Arbitrator Anthony Miller (the "Award").  As discussed in further detail below, Arbitrator Miller improperly ruled that a private agreement, the August 2017 Memorandum of Agreement (the "MOA"), is controlling over a Tribal law, the Tribal Labor Relations Ordinance (the "TLRO").  His ruling contravened well-established public policy and demonstrated a disregard for the unshakable sovereignty and statutory rights of the Tribe.  The Union's motion rests on the flawed premise that the MOA can override a later-enacted TLRO.  This position disregards the Tribe's inherent sovereign authority, misrepresents the explicitly negotiated express language in the MOA that deferred to the TLRO's recognition framework to govern labor relations at Sky River Casino (the "Casino"), and improperly treats Arbitrator Norman Brand's reasoning in an earlier March 17, 2024 award as binding precedent.  Because both Arbitrators Brand and Miller exceeded their authority and the Award is fundamentally flawed, the Tribe respectfully requests that this Court decline to confirm the Award and, instead, vacate or modify the Award.

The Tribe further requests the Court deny the Union's request for the Tribe to submit to interest arbitration over the terms of a collective bargaining agreement.  Pursuant to the MOA, interest arbitration can only occur 120 days after the Tribe's recognition of the Union.  Not only has the MOA expired, but even if it hadn't, the 120 days have not been triggered because the Tribe has never recognized the Union.

II.   **FACTUAL BACKGROUND**

The Tribe is a sovereign, federally recognized Indian tribe with its own constitution, laws, and government located near Elk Grove, California. The Tribe operates a casino, called Sky River, pursuant to authorization from the United States Secretary of the Interior under the Indian Gaming Regulatory Act, 25 U.S.C. § 2701 ("IGRA").  As a condition of operating "class III" (i.e., casino-style) gaming under the IGRA, the Tribe was required to negotiate the "Tribal-State

1

compact" with the State of California "governing the conduct of gaming activities."  25 U.S.C. § 2710(d)(3).  The Tribe also agreed to enact its own statute incorporating the Compact into Tribal law.  In June 2017, the Tribe and the State of California entered into a Tribal-State Gaming Compact (the "Compact"), which became effective on January 22, 2018.  Most notably, the template Tribal Labor Relations Ordinance contains the procedures to be used if a union indicates an interest in representing employees of a casino, including a process for a secret ballot election if the interested union is able to gather signed cards from at least 30% of the eligible employees.

On April 18, 2019, through its legislative process, the Tribe enacted the Tribal Labor Relations Ordinance of 2019 (the "TLRO") as Tribal legislation.  The Compact—and the legislations enacted pursuant to it, like the TLRO—form the legal framework that governs labor relations at the Casino.  As evidenced by references to the Compact and the TLRO in a Memorandum of Agreement (the "MOA") entered into in August 2017 among the Tribe, Boyd Gaming (as the Tribe's gaming management company), and the Union, the Union was well aware of the TLRO.  (Declaration of Shaneeda Jaffer in Support of Plaintiff's Opposition to Defendant Unite Here's Motion to Confirm Arbitration Award and Compel Interest Arbitration ("Jaffer Decl."), Ex. A).  By this time, the Tribe had signed the Compact and was obtaining ratification of it.  And the Union, pursuant to paragraph 14 of the MOA, had agreed "to actively support . . . the Tribe's efforts to obtain ratification of the Compact."  In addition to paragraph 14, the MOA expressly indicates the parties' intention that the Union's employee organizing efforts would be governed by the provisions of the TLRO.  Paragraph 2 of the MOA provides: "[t]he parties agree that the Tribal Labor Relations Ordinance governs labor relations at the Casino, and to hereby establish the following procedure for the purpose of ensuring an orderly environment for Employees to exercise their rights under the Tribal Relations Ordinance to organize collectively[.]"  *Id*.

However, the MOA also contains provisions that differ from the TLRO.  For example, under the MOA, if the Union provides a notice of intent to organize ("NOIO"), the Tribe was required to furnish the Union a list of employees within fifteen (15) days.  *Id*.  Conversely, Section

3-207(c) of the TLRO (appearing as Section 7(c) in the State's template) provides that the Tribe must provide the employee list within two (2) days of receiving the Union's NOIO.  (*See* Jaffer Decl., Ex. B).  More importantly, Section 3-210 of the TLRO (appearing as Section 10 in the template) provides that if the Union provides the Tribe with signed and dated authorization cards from 30% or more employees, there will be a secret ballot election held among eligible employees to determine if they wish to be represented by the Union, and if more than 50% of the employees vote for the Union, the Union would become the certified representative of the employees.  On the contrary, paragraph 7 of the MOA purports to deprive employees of a secret ballot election and provides that the Union would be recognized as the exclusive collective bargaining representative of the employees if the Union presents signed authorization cards from a majority of the employees (this process is known colloquially as a "card check"), without the benefit of a secret ballot election.

In any event, because the MOA (a contract between private parties) provides that the TLRO (a duly enacted Tribal law) governs labor relations at the Casino, and the TLRO provides for a secret ballot election if a union presents to an arbitrator signed cards from at least 30% of the employees, the MOA therefore also requires a secret ballot election.  The Tribe enacted the TLRO on April 18, 2019, and the Casino opened in August 2022.  On February 2, 2023, the Union presented the Tribe with a written NOIO, and the Tribe thereafter provided the Union with the employee list *pursuant to the TLRO*.  On June 20, 2023, the Union informed the Tribe that it had collected signed authorization cards from a majority of the eligible employees, but instead of agreeing to hold a secret ballot election as required by the TLRO, the Union claimed that the Tribe had to recognize the Union as the exclusive bargaining representative of the eligible employees.  The Tribe objected to the notion that a card check under the MOA, which comprehended the later-enacted TLRO, could supersede the TLRO and responded that it would agree to hold an election under the procedures outlined in the TLRO, but the Union refused.  Eventually, the Tribe and the Union agreed to have an arbitrator decide whether the MOA or TLRO controlled the Union's organizing efforts.

///

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**
**Case No. 2:25-cv-02413-DJC-SCR**

The Tribe and the Union chose Arbitrator Norman Brand from the Tribal Labor Panel, as set forth in the TLRO, to determine this discrete issue.  Arbitrator Brand recited the basis for the dispute between the Tribe and the Union in footnote 2 of his Award dated March 17, 2024, as follows:

> Pursuant to the Tribal-State Gaming Compact between the State of California and Wilton Rancheria, Wilton Rancheria was required to adopt and maintain Tribal Law identical to the Tribal Labor Relations Ordinance attached to the Compact. To comply with this requirement, Wilton Rancheria enacted the Tribal Labor Relations Ordinance of 2019 (TLRO), codified as Chapter 3 of the Wilton Rancheria Labor Code, on April 18, 2019.  The TLRO provides for a two-step certification process before an arbitrator from the Tribal Labor Panel: (1) dated and signed authorization cards from thirty percent (30%) or more of the Eligible Employees; and (2) a secret ballot election requiring more than fifty percent (50%) of Eligible Employees.  The TLRO requires all issues to be resolved by a resolution by the Tribal Labor Panel. [The Union] refuses to comply with the two-step certification process and the dispute resolution mechanism identified in the TLRO, relying on a Memorandum of Agreement (MOA) signed by the parties on August 7, 2017, prior to the enactment of the Tribe's TLRO.

(*See* Jaffer Decl., Ex. C, p. 2, n. 2).  Arbitrator Brand framed the issue he was deciding as "[w]hether the Union must comply with the TLRO promulgated April 18, 2019, or the Tribe must comply with the MOA signed by the parties on August 7, 2017."  *Id*. at p. 3. 13.  In his Award, Arbitrator Brand decided the "Tribe must comply with the MOA signed by the parties on August 7, 2017."  *Id*. at p. 16.  Arbitrator Brand set forth three reasons for his finding: (1) the Tribe agreed to the MOA and, "[n]othing suggests the Tribe was unaware that it was agreeing to permit the Union to organize its employees and gain recognition through the card check process described in ¶ 7;" (2) the Tribe's contention that the purpose of the MOA was ". . . to memorialize the tribe's promise to maintain neutrality while allowing the union to organize in exchange for the union's support of ratification of the compact []" was unsupported; and (3) "the Tribe fails to show that the TLRO is a law it made as a sovereign that takes precedence over the MOA."  *Id*. at p. 19. However, Arbitrator Brand's Award is still pending review by the Ninth Circuit.  *Unite Here Local 30 v. Wilton Rancheria*, No. 25-34, (9th Cir. 2025) (DE # 13.1) (Tribe's Opening Brief in its Ninth Circuit Court of Appeals challenge of the District Court's Order denying the Tribe's Motion to Vacate the Award of Arbitrator Brand).  Thereafter, the Tribe and the Union participated in a

4

1  second arbitration on Friday, March 14, 2025.  The narrow issue covered in the hearing before

2  Arbitrator Anthony Miller related to Arbitrator Miller's decision to count the Union authorization

3  cards at issue.

4       In establishing the procedures and rules for reviewing the authorization cards presented

5  by the Union, Arbitrator Miller, like Arbitrator Brand, relied on the MOA rather than the TLRO.

6  Importantly, Arbitrator Miller did not make this determination from a neutral position, choosing

7  instead to rely on Arbitrator Brand's analysis.  Based on his review of the authorization cards,

8  Arbitrator Miller determined that the majority of employees in the bargaining unit "designated the

9  Union as their exclusive collective bargaining representative," and that, pursuant to the MOA,

10  this required the Employer to "recognize the Union as such representative of such employees"

11  to engage in collective bargaining.  (Jaffer Decl., Ex. D, p. 8).  In its Post Hearing Brief, the Tribe

12  argued that the issues to be determined by Arbitrator Miller exceeded the narrow issue of

13  reviewing and counting the cards collected by the Union.  Rather, the Tribe argued that Arbitrator

14  Miller was required to determine: (1) whether Arbitrator Miller had the authority to conduct the

15  card check process outlined in the MOA while disregarding the TLRO's requirements to have a

16  secret ballot election; (2) the extent to which the TLRO or the MOA governed or the proper order

17  in which the TLRO and the MOA governed if both were appropriately considered; and (3)

18  whether the authorization cards were still valid and, if they were only valid in part, what the

19  appropriate cutoff date would be.  (Jaffer Decl., Ex. E, p. 4).

20       Before ruling on the issues identified by the Tribe, Arbitrator Miller invited the parties to

21  submit Supplemental Post-Hearing Briefs.  In its Supplemental Post-Hearing Brief, the Tribe

22  raised its concern that Arbitrator Miller, like Arbitrator Brand, seemingly credited the MOA rather

23  than the TLRO as controlling the election process.  Again, the Tribe stressed the importance of

24  Tribal sovereignty and challenged both Arbitrators' assumptions that a prior private agreement

25  between the Tribe and the Union would prevail over a later-enacted Tribal law.  Despite raising

26  the issue on multiple occasions, in Arbitrator Miller's June 17, 2025 Award, Arbitrator Miller

27  "adopted . . . the Decision of Arbitrator Brand in this matter, his reasoning, and his conclusion

28  that the Memorandum of Agreement applies to this dispute rather than the Tribal Labor Relations

5

Ordinance." (Jaffer Decl., Ex. F, p. 11). In deciding that the Tribe must comply with the MOA, Arbitrator Miller improperly failed to recognize that he was giving precedence to an agreement (that itself incorporated the contemplated TLRO election process) over a legislative enactment of a sovereign nation. Arbitrator Miller—even after acknowledging he was not a handwriting expert—declined to allow the Tribe to verify the authenticity of the cards, despite the Tribe's concerns regarding the cards' legitimacy. Thus, the Tribe disputes the Miller Award and its validity, declines to comply with the Miller Award, and denies any obligation to recognize or negotiate with the Union.

On August 22, 2025, the Tribe timely filed its motion to vacate the Miller Award, challenging its legitimacy. *See* Dkt. No. 1. In response, on October 20, 2025, the Union filed an opposition to the motion to vacate and a counter motion to confirm the Miller Award. Both motions are scheduled to be heard together. The Tribe opposes the Union's request for a court order compelling compliance, and instead requests that this Court not confirm the Award, and either vacate or correct it.

## III.   LEGAL ARGUMENT

### A.   SECTION 301 DOES NOT CONFER JURISDICTION IN THIS MATTER.

The Union's reliance on Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C § 185, is misplaced. Section 301 does not confer jurisdiction to enforce the Award or order further arbitration here because the dispute does not arise from a collective bargaining agreement ("CBA"), is not an agreement that "importantly and directly" affects the employment relationship, and is not primarily a contractual dispute. 29 U.S.C § 185; *Retail Clerks Int'l Ass'n, Local Unions Nos. 128 & 633 v. Lion Dry Goods, Inc.*, 369 U.S. 17, 28 (1962) (A controversy that importantly and directly affects the employment relationship falls within Section 301—wages, discipline, or job duties.); *Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448, 449-52 (1957) (once employees have entered collective bargaining contract, enforcement should be left to usual process of the law); *Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550, 551 (1957) (the arbitration provision arose from a collective bargaining agreement); *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 595-96 (1960)

6

1  (reinstatement of discharged employees was unenforceable because CBA had expired); *Stead*

2  *Motors of Walnut Creek v. Automotive Machinists Lodge No. 1173*, 886 F.2d 1200, 1202-1204

3  (9th Cir. 1989) (*en banc*) (review of the arbitrator's award was in the context of a CBA); *Garcia*

4  *v. Bradshaw*, 24-CV-03068-JSC, 2025 WL 964685, at *3 (N.D. Cal. Mar. 31, 2025) (Federal

5  courts have drawn a clear jurisdictional line and "should look at whether the major issues to be

6  decided . . . can be characterized as primarily representational or primarily contractual."); *United*

7  *Ass'n of Journeymen & Apprentices of Plumbing & Pipefitting Indus., Steamfitters &*

8  *Refrigeration Union, Local 342, AFL-CIO v. Valley Engineers*, 975 F.2d 611, 613-614 (9th Cir.

9  1992), as amended (Oct. 16, 1992) (*citations omitted*) ("[C]ongress did not intend by enacting

10  Section 301 to vest in the courts initial authority to consider and pass upon questions of

11  representation and determination of appropriate bargaining units.").

12    In this case, this dispute does not involve a CBA, nor is *Retail Clerks'* "importantly and

13  directly affecting" standard met since the MOA is not a CBA or a labor contract related to wages,

14  discipline, or job duties.  Instead, the dispute concerns the governing framework for union

15  recognition—a procedural issue that at best indirectly affects employee rights.  *Retail Clerks Int'l*

16  *Ass'n*, *supra*, 369 U.S. 17 at 28.  Additionally, Section 301 is not applicable since its scope does

17  not extend to labor contracts that can be characterized as primarily representational, like this

18  one.  *Garcia v. Bradshaw*, *supra*, 24-CV-03068-JSC, 2025 WL 964685 at *3; *UNITE HERE Local*

19  *30 v. Sycuan Band of the Kumeyaay Nation*, 35 F.4th 695, 699-704 (9th Cir. 2022) (whether the

20  TLRO was a binding contract and was breached is a classic contractual issue); *Hotel Employees,*

21  *Rest. Employees Union, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468-69 (9th Cir. 1992)

22  (enforced the clear contractual obligations—hiring and employer neutrality, but union recognition

23  was treated as representational); *Serv. Employees Int'l Union v. St. Vincent Med. Ctr.*, 344 F.3d

24  977, 982-986 (9th Cir. 2003) (court's focus was on employer conduct during union formation, not

25  recognition procedures).  Further, Judge Mueller in her 2024 Order has already considered and

26  rejected the argument that Section 301 provides jurisdiction in these matters, concluding that

27  the Federal Arbitration Act (FAA)—not Section 301—is the proper framework for this dispute.

28  *Unite Here v. Wilton Rancheria*, 2:23-CV-02767-KJMSCR, 2024 WL 5047033, at *5-6 (E.D. Cal.

Dec. 9, 2024).

The additional Section 301 cases the Union relies on are not applicable to award enforcement or to compel additional arbitration between the parties as they do not address enforcement of arbitration awards outside Section 301 jurisdiction or a CBA agreement. *See Textile Workers v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957); *Goodall-Sanford, Inc. v. United Textile Workers Local 1802*, 353 U.S. 550 (1957); *AT&T Technologies, Inc. v. Communications Workers*, 475 U.S. 643 (1986); *Sheet Metal Workers Int'l Ass'n Local No. 359 v. Madison Industries, Inc. of Arizona*, 84 F.3d 1186 (9th Cir. 1996); *see also United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593 (1960) (CBA agreement at issue). Thus, Section 301 does not authorize enforcement of the arbitration award nor does it give authority to compel further arbitration.

### B. THE TRIBE'S LIMITED CONSENT TO ARBITRATION DOES NOT CONFER JURISDICTION UNDER SECTION 301 AND IS NOT A BLANKET WAIVER.

As stated above, Section 301 does not confer jurisdiction here because it does not apply to the MOA, which is neither a labor contract nor a CBA. The Tribe's limited waiver of sovereign immunity within the MOA is specific and does not extend beyond the context of this narrow issue being arbitrated, nor does it reflect consent to broader jurisdiction or claims. As such, the cases the Union relies on are inapplicable to its motion or the status of the Tribe's sovereignty. In *Sycuan Band*, the Court addressed NLRA jurisdiction over an employment dispute, not the enforceability of a non-CBA agreement under Section 301. *Sycuan Band*, *supra*, 35 F.4th at 701-702. In *C&L Enterprises*, the Court held the arbitration clause in the commercial contract was a broad general waiver—unlike the narrow, purpose-specific waiver within the MOA. *C & L Enterprises, Inc. v. Citizen Band Potawatomi Indian Tribe of Oklahoma*, 532 U.S. 411, 412 (2001) ("The arbitration clause requires resolution of all contract-related disputes between the parties by binding arbitration."); *Evans Energy Partners, LLC v. Seminole Tribe of Florida, Inc.*, 21-13493, 2022 WL 2784604, at *1-3 (11th Cir. July 15, 2022) (courts will not infer broader immunity waivers or arbitration rights from ambiguous or narrowly tailored contract language); *First Am. Casino Corp. v. E. Pequot Nation*, 541674, 2001 WL 950243, at *5 (Conn. Super. Ct.

8

July 16, 2001) ("In this case the agreement contains a limited arbitration clause. The factors that would lead to a determination that the tribe has waived its immunity in all circumstances are not found here."); *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 58 (1978) ("[A] waiver of sovereign immunity 'cannot be implied but must be unequivocally expressed.'"). To imply a waiver of tribal sovereign immunity would dismantle the certainty on which the Tribe's self-government depends, opening the door to uncontested suits that drain the Tribe's resources, undermine the Tribe's internal decision-making, and destabilize the respect for Indian Tribes safeguarded by federal law. Thus, Section 301 remains inapplicable to confer jurisdiction, and the limited arbitration clause is not a blanket wavier.

## C. EVEN IF SECTION 301 APPLIES, THE MILLER AWARD SHOULD NOT BE CONFIRMED.

### 1. Pursuant to the Federal Arbitration Act, the Miller Award Should Not Be Confirmed.

Pursuant to the Federal Arbitration Act ("FAA"), a party to an arbitration may seek to have the court confirm the arbitration award. 9 U.S.C. § 9. The court must grant the request unless the award is vacated, modified, or corrected pursuant to Section 10. Section of the FAA states that a court may vacate an arbitration award "where the arbitrators exceed their powers, or so imperfectly executed them that a mutual, final, and definitive award upon the subject matter submitted was not made." 9 U.S.C.A. § 10(a)(4). Here, in making his Award, Arbitrator Miller exceeded his power by exhibiting a manifest disregard of both federal and Tribal law and by basing the Award on Arbitrator Brand's unenforceable award and his own irrational reading of the MOA.

The Union's motion to confirm the Miller Award rests on a misapplication of Section 301 and a flawed reading of the MOA—ignoring both the TLRO and the Tribe's ongoing dispute over the Union's claimed majority support. The Union cites *Lincoln Mills*, *supra*, 353 U.S. at 450-51, and *Madison Industries*, *supra*, 84 F.3d at 1190, to argue that the Miller Award should be confirmed under Section 301. However, this argument hinges on the presumptions that Section 301 applies to the MOA and that the Award draws its essence from the agreement, thus

9

warranting deference.  For the reasons stated above, Section 301 does not apply to this dispute, and even if it did, deference under Section 301 is not absolute; courts may decline to confirm awards "(1) when the award does not 'draw its essence from the collective bargaining agreement'; (2) when the arbitrator exceeds the scope of the issues submitted; and (3) when the award runs counter to public policy."  *SFIC Properties, Inc. v. Int'l Ass'n of Machinists & Aerospace Workers, Dist. Lodge 94, Local Lodge 311*, 103 F.3d 923, 924-25 (9th Cir. 1996) (awards must reflect a "plausible interpretation of the contract"); *Sheet Metal Workers Int'l Ass'n Local No. 359 v. Madison Industries, Inc. of Arizona*, *supra*, 84 F.3d at 1190.  The Union, citing *Enterprise Wheel & Car Corp.*, omits that the case was evaluating the arbitrator's deference based on a CBA, and presumes that Arbitrator Miller's Award reflects a plausible and informed interpretation of the contract's actual terms.  *United Steelworkers v. Enterprise Wheel & Car Corp.*, *supra*, 363 U.S. at 595-97. Additionally, the Union's citation to *Rexam Graphic*, 221 F.3d 1085, 1090 (9th Cir. 2000), similarly omits that the dispute at issue was a CBA, where the Court was determining whether the award drew from the essence of the CBA, and presumes the Award was in line with the expectations of the parties, which it was not—as evidenced by both Arbitrators Brand and Miller failing to interpret the MOA in light of the TLRO, and elevating a superseded private agreement over Tribal law.  *Ass'n of W. Pulp & Paper Workers, Loc. 78 v. Rexam Graphic, Inc.*, 221 F.3d 1085, 1090 (9th Cir. 2000).

### 2.    The Award Fails to Draw its Essence from the Agreement.

Arbitrator Miller's interpretation of the MOA disregards the clear language in paragraph 2 of the MOA, which referenced and addressed the Compact's model Tribal Labor Relations Ordinance where the parties agreed that the TLRO governs labor relations at the Casino.  Dkt. No. 1, ¶¶ 38-40.  This is not a case of contract construction or interpretation, but a case where Arbitrator Miller, and Arbitrator Brand before him, modified the agreement in a manner that directly contradicts its express provisions, thereby failing to draw its essence from the MOA. *Aspic Eng'g & Constr. Co. v. ECC Centcom Constructors LLC*, 913 F.3d 1162, 1168 (9th Cir. 2019) ("the Arbitrator exceeded his authority and . . . [t]he Award disregarded specific provisions of the plain text in an effort to prevent what the Arbitrator deemed an unfair result. Such an award

10

is 'irrational.'"). Specifically, paragraph 16 of the MOA provides that: "In the event that any provision of this Agreement should be rendered invalid by applicable legislation . . . the matter shall be submitted to arbitration . . . the arbitrator shall choose or formulate a substitute provision which accomplishes the purposes of the preceding sentence." The TLRO, enacted as Tribal law after the MOA, constitutes "applicable legislation" within the meaning of paragraph 16. As such, Arbitrator Miller was obligated to assess whether any MOA provisions were rendered invalid with the passage of the TLRO and, if so, to formulate substitute provision(s) that align with the TLRO's objectives: a secret ballot election. Instead, Arbitrator Miller, and Brand before him, disregarded the TLRO entirely and elevated the MOA over governing Tribal law, thereby creating a legal incompatibility and imposing obligations not found in the TLRO. If the Award truly drew its essence from the MOA, it would elevate the TLRO, which the MOA anticipated, and not recognize any union until said union receives majority support through the secret ballot process outlined in controlling authority, as the parties intended. Any procedure inconsistent with the TLRO does not draw from the essence of the agreement and lacks authority and enforcement. *See United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Products, Litton Sys., Inc.*, 704 F.2d 393, 395 (8th Cir. 1983), on reh'g, 728 F.2d 970 (8th Cir. 1984) (courts may vacate an award that contravenes a limitation in the governing agreement or rests on unsupported factual assumptions).

### 3. The Award Fails to Acknowledge and Follow a Valid, Duly Enacted Tribal Law.

The Tribe was not noncompliant with the MOA—it complied with the TLRO, which the MOA expressly incorporates as governing law. *Ficks Reed Co. v. Local Union 112 of Int'l Union, Allied Indus. Workers of Am., AFL-CIO*, 965 F.2d 123, 125-26 (6th Cir. 1992) (ignoring an incorporated and enacted agreement renders the arbitration award unenforceable under Section 301 and fails to draw the essence from the agreement). Additionally, the Union is aware that the Tribe has consistently contested the Union's claim that it enjoys majority support among bargaining unit employees, as reflected in multiple correspondences and in the Tribe's Reply to the Union's Opposition to Vacate the Award (Dkt No. 13, p. 4, fn.1). Jaffer Decl., Ex. G. This

11

ongoing dispute over majority support underscores the importance of adhering to the recognition process outlined in the TLRO, not bypassing it through an arbitrator's discretionary remedy. While courts may recognize an arbitrator's deference when formulating remedies, the remedy must still be anchored to or draw its essence from the agreement. *Aspic Eng'g & Constr. Co.*, *supra*, 913 F.3d at 1168. The Union's reliance on paragraphs 7 and 8 of the MOA to justify the Miller Award compelling recognition and negotiation is misplaced; those provisions cannot be read in isolation. Paragraph 2 of the MOA expressly incorporates the TLRO, which establishes a secret ballot election as the exclusive process for union recognition. Arbitrator Miller's decision to compel recognition based on card checks elevates the MOA over the very law it references as its own superseding authority. Until the TLRO's process is followed and majority support is confirmed through a secret ballot, paragraphs 7 and 8 remain premature and inapplicable. As the *Ficks Reed Co.* court held, ignoring an incorporated and enacted agreement renders the arbitration award unenforceable and fails to draw its essence from the agreement. *See Ficks Reed Co.*, *supra*, 965 F.2d at 125-26.

### 4. Arbitrator Miller's Award Constitutes a Manifest Disregard of the TLRO.

Not only does the Tribe oppose the MOA being elevated over the TLRO—contrary to the parties' intent—the Tribe also disputes that the Union has garnered majority support for recognition, and has been denied the ability to verify this claim by Arbitrator Miller. Arbitrator Miller barring the Tribe's counsel from reviewing the authorization cards, claiming it would have an adverse impact on the Tribe's employees, is inconsistent with his approach to interpreting the MOA. What makes the reasoning particularly troublesome is his selective interpretation of the MOA. On one hand, he invokes the MOA to narrowly construe and deny the Tribe's legitimate request to verify the Union's claim that it enjoys majority support, while simultaneously expanding the MOA's scope beyond what the parties agreed and intended, and elevating it over the TLRO, despite clear language in the MOA conferring superiority to the TLRO. Ultimately, by disregarding the clear language and intent of the parties' agreement—i.e. that the TLRO would govern labor relations at the Casino—and substituting his own judgment in place of negotiated

12

terms, Arbitrator Miller demonstrated that his Award fails to draw its essence from the agreement.  An arbitration award based on personal notions that disregards the contract provision, or modifies unambiguous contract provisions, fails to draw its essence from the agreement and therefore should be vacated.  *Patten v. Signator Ins. Agency, Inc.*, 441 F.3d 230, 235-237 (4th Cir. 2006) (award disregarding unambiguous language of the governing agreement fails to draw essence from agreement).

Moreover, Arbitrator Miller's decision to deny the Tribe the ability to verify authorization cards due to concerns about retaliation, while simultaneously depriving employees of their right to a secret ballot election, rings hollow and undermines the very protections the TLRO was designed to uphold.  Indeed, the Casino's employees should never have to worry about coercion, intimidation or retaliation—that is what the TLRO, through its secret ballot election procedure, was designed to safeguard against.  By denying the Tribe the ability to verify authorization cards while disregarding the TLRO's secret ballot process, the Award effectively imposes a recognition process that lacks transparency, accountability, and legitimacy.  Arbitrator Miller's decision ignores the broader protections found in the TLRO—a *secret* ballot election—and relies instead on handwritten signatures that Arbitrator Miller acknowledges he lacks the expertise to evaluate. The Tribe respectfully request that this Court deny the motion to confirm, but, if it does not, at the very least, the Court should allow the Tribe or a third party with relevant expertise to verify the authenticity of the cards submitted by the Union—consistent with the Court's authority to consider extrinsic evidence when determining whether the award draws its essence from the agreement.  *United Elec., Radio & Mach. Workers of Am., Local 1139 v. Litton Microwave Cooking Products, Litton Sys., Inc.*, 704 F.2d 393, 397 (8th Cir. 1983), on reh'g, 728 F.2d 970 (8th Cir. 1984) (courts may consider arbitrator's reasoning and extrinsic evidence to determine if an award draws its essence from the agreement).

Finally, the Union's assertion related to Arbitrator Miller rejecting the Tribe's argument does not cure the fundamental flaw in the Award, namely, that Arbitrator Miller failed to independently recognize the controlling framework and instead improperly adopted reasoning contrary to the parties' intent.  The Union's reliance on *Celotex Corp.*, 708 F.2d at 490, is

13

1   inapplicable.  *Brotherhood of Teamsters & Auto Truck Drivers Local No. 70 of Alameda Cnty. v.*
2   *Celotex Corp.,* 708 F.2d 488, 490 (9th Cir. 1983).  In *Celotex Corp.*, Celotex failed to file a timely
3   petition to vacate, so the Court declined to consider it.  *Id.*  In contrast, here, the Tribe timely
4   filed a motion to vacate.

5   **D.    INTEREST ARBITRATION CANNOT BE COMPELLED.**

6   The Union's attempt to compel arbitration fails for several reasons.  First, paragraph 8 of
7   the MOA provides for interest arbitration, *only* 120 days after the Tribe has recognized the Union
8   as the collective bargaining representative of the Casino's employees.  Yet for the reasons
9   detailed below, recognition has not occurred.  Next, even if recognition had occurred—it has
10  not—the MOA expired in August 2025 by its own terms.  And with it, so too did the obligation to
11  arbitrate.

12  To put it simply, the Union's attempt to compel interest arbitration depends on factors that
13  have either not occurred, or no longer are in effect.  Thus, both the absence of recognition and
14  the expiration of the MOA independently defeat the Union's attempts to compel arbitration.

15  **1.    Recognition Did Not Occur on June 17, 2025.**

16  The Union acknowledges that "the Tribe has denied that it must recognize the Union,"
17  Dkt. No. 8, 7:4-5, but then also claims that recognition occurred "automatically" on June 17,
18  2025.  Dkt. No. 8, 7:18-19.  This notion of an "automatic" recognition is supported by neither
19  facts nor law.

20  As an initial matter, the Tribe has not recognized the Union.  As implicitly admitted by the
21  Union's emphasis on "automatic recognition," no affirmative action or acknowledgement by the
22  Tribe supports the Union's position.    And as acknowledged by the Union, the Tribe has
23  consistently maintained the *lack* of recognition.  *See* Jaffer Decl., Ex. G (The Tribe "does not
24  now, nor has it ever, recognized UNITE HERE as the collective bargaining representative of its
25  employees."  *Id.* at p. 2.  "Arbitrator Miller's award is not an enforceable order . . . Section 8 refers
26  to 120 days from *recognition*, which, as you are aware, the Tribe has never done."  *Id.* at p. 1.).

27  Moreover, the language in Arbitrator Miller's award is critical.  The Award does *not* state
28  that the Union is henceforth recognized as the exclusive bargaining representative.  Rather,

14

Arbitrator Miller's award merely *orders* the Tribe to recognize the Union: "[t]he Tribe is hereby ordered to recognize the Union,". (*See* Jaffer Decl., Ex. F, p. 12). In other words, this language—which the Union admits merely "direct[s] the Tribe to recognize the Union" (Dkt. No. 8-1, 7:17)—demonstrates that recognition neither occurred on that date nor automatically at the time of Arbitrator Miller's award. *The Award itself does not purport to create the recognition*. This is particularly significant given that the Arbitrator's award remains the Union's *sole* basis for their position that the recognition occurred on June 17, 2025. The Union's entire basis for recognition purportedly occurring on June 17, 2025, rests on this faulty argument that ignores the plain language of Arbitrator Miller's award: the award is not a self-executing decree, but instead requires the Tribe to affirmatively recognize the Union. It has not done so.

The Union cites various authority from other courts in an attempt to establish that Arbitrator Miller's award is a sufficient basis for this "automatic" and "immediate" recognition of the Union; yet this reliance is misguided. These cases do not involve a similarly applicable situation where the employer—particularly a sovereign tribe—*never recognized the union at all*. For instance, the Union points to *NLRB v. Creative Food Design Ltd.*, which involves an express recognition. 852 F.2d 1295, 1297 (D.C. Cir. 1988) (the employer "agreed to recognize Local 25 . . . the company, through its president, had voluntarily recognized the Union."). Furthermore, in *Promenade Garage Corp.*, the NLRB based its conclusion on specific contract language that does not appear in the MOA. *Promenade Garage Corp.*, 314 NLRB 172, 182 (1994) ("Based on this contract language . . . it was required to recognize and apply the MGOA agreement to employees employed . . . pursuant to its 'additional store clause[.]'"). These decisions are incompatible with the facts here and do not support the Union's argument for automatic recognition occurring on June 17, 2025.

To the contrary, this Court has established that only after the federal court grants judgment and issues an order can "the arbitration award [be] hereby confirmed and enforced." *Unite Here Loc. 19 v. Picayune Rancheria of Chukchansi Indians*, 101 F.Supp.3d 929, 937 (E.D. Cal. 2015). In *Picayune Rancheria*, the union filed a federal court petition seeking "confirmation and enforcement of a labor arbitration award" because the tribe did not automatically comply

15

with the arbitrator's award.  *Id.* at 931-32.  There, the Eastern District held that despite the tribe not yet complying with the arbitrator's award, the award was not legally binding until the federal court granted judgment.  *Id.* at 937.

Therefore, recognition cannot automatically occur or be manufactured simply out of an arbitrator's award, particularly where the arbitral award itself does not claim to be an act of recognition.  Case law and common sense both dictate that recognition requires more. Therefore, recognition did *not* occur on June 17, 2025 (or at any other time, for that matter).  As such, because the MOA does not require interest arbitration until 120 days after recognition, the Union cannot yet compel arbitration.

### 2.    The MOA Has Expired.

The Union maintains that it is not too late to order arbitration.  Yet here, there is no continuing obligation to arbitrate.  Even the Union admits that the MOA has expired: "[the MOA] remains in 'full force and effect' for 'three (3) [years] from the full public opening of the Casino' and that three-year period ended in August 2025[.]"  Dkt. No. 8, 8:17-18; Jaffer Decl., Ex. A. There is no ambiguity in this governing language—once that period terminated, the MOA is no longer in full force and effect, along with the contractual duty to arbitrate.  Similarly, upon expiration of the MOA, the Tribe's limited waiver of sovereign immunity also expired.

Although the Union argues that there can be a presumption to arbitrate disputes under the MOA, that presumption is not without its limits.  *See Litton Fin. Printing Div. v. N.L.R.B.,* 501 U.S. 190, 209 (1991) ("[W]e refuse to apply that presumption wholesale in the context of an expired bargaining agreement, for to do so would make limitless the contractual obligation to arbitrate.").  Furthermore, the Supreme Court in *Litton* affirmed that "arbitration is a matter of consent, and that it will not be imposed upon parties beyond the scope of their agreement."  *Id.* at 201.

This limited presumption to arbitrate after the expiration of the contract does not extend to the case at bar.  Nor does *South Bay Boston Management, Inc. v. UNITE HERE Local 26* compel a different result, despite the Union's misplaced argument that it is "on fours" with the facts here.  587 F.3d 35, 38 (1st Cir. 2009).  As an initial matter, unlike the private-sector

16

1    employer in *South Bay* that explicitly recognized the union, the Tribe, a sovereign nation, has

2    not done so.  Further, in *South Bay*, the First Circuit had compelled arbitration over a dispute

3    regarding an existing contractual obligation.  Here, by contrast, the Union seeks interest

4    arbitration to determine "what the terms of a contract *will be*."  Dkt. No. 8, 8:26-27 (emphasis

5    added).  The Union's own framing illustrates the forward-looking purpose that places the interest

6    arbitration at bar well outside *South Bay*'s findings.  Arbitration to determine *future* contract terms

7    cannot be compelled after the MOA—the governing agreement—has expired.  These significant

8    distinctions demonstrate that *South Bay* is not "on fours" with the facts here, and its holding does

9    not demonstrate that post-contract arbitration applies here.

10           Indeed, other courts have also applied *Litton* in finding that arbitration obligations do *not*

11   survive contract expiration.  In *Coast Hotels and Casinos, Inc.*, the District Court, applying *Litton,*

12   found that the union grievance arising *after* the contractual expiration was not arbitrable.  *Coast*

13   *Hotels and Casinos, Inc. v. Culinary Workers Union Local 226*, 35 F.Supp.2d 765 (D. Nev. 1999).

14   Additionally, the Sixth Circuit has applied *Litton* to determine that the disputes at issue "did not

15   accrue or vest under the contract" and "did not survive the expiration of the contract," as courts

16   must decide whether the disputed right survives expiration "under basic contract principles, not

17   under the policy favoring arbitration."  *Stevens-Bratton v. TruGreen, Inc*, 675 F. App'x 563, 571

18   fn. 3 (6th Cir. 2017); *see also The Basketball Mktg. Co. v. Urbanworks Ent.,* No. CIV.A. 04-CV-

19   3179, 2004 WL 2590506, at *6 (E.D. Pa. Nov. 10, 2004) ("Once the underlying contract expires,

20   an arbitration clause survives to cover only those exceptions outlined in *Litton*, unless the parties

21   include language within the clause extending its duration . . . To conclude otherwise would result

22   in the perpetual arbitrability of all future claims between plaintiff and defendant, thereby

23   undermining the parties' intent and eviscerating the *Litton* rationale that the purpose of an

24   arbitration clause 'is to enforce a contract rather than to transcend it.'") (quoting *Litton*, 501 U.S.

25   at 205).

26           The MOA's expiration does not, however, leave the Union without an avenue for recourse.

27   Indeed, the Union need look no further than the MOA itself for guidance on how to proceed.

28   There, in paragraph 2, the Union will find its answer: "the Tribal Labor Relations Ordinance

governs labor relations at the Casino."

## IV.    <u>CONCLUSION</u>

For these reasons, the Tribe respectfully requests that the Court deny the Union's Motion to Confirm the Arbitration Award and Compel Interest Arbitration.  Arbitrator Miller's decision improperly elevated the MOA, a private agreement, over the TLRO, the duly enacted law of a sovereign nation, and disregarded the Tribe's sovereign authority.  Both Arbitrators Brand and Miller exceeded their authority, rendering the Award invalid.  Because the MOA has expired and the Tribe has never recognized the Union, the conditions for interest arbitration have not been met.  The Tribe therefore asks the Court to vacate or, in the alternative, modify the Award and to deny the Union's request for interest arbitration.

Dated:  November 12, 2025                      Respectfully submitted,


                                                            <u>*/s/ Shaneeda Jaffer*</u>
                                                            Shaneeda Jaffer
                                                            Ruby H. Kazi
                                                            Carlo Lipson
                                                            BENESCH, FRIEDLANDER, COPLAN &
                                                                 ARONOFF LLP

                                                            Attorneys for Plaintiff
                                                            WILTON RANCHERIA, CALIFORNIA

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CONFIRM ARBITRATION AWARD**
**Case No. 2:25-cv-02413-DJC-SCR**